Jack HAYWARD, Appellant,

v.

Linda L. HAYWARD, Appellee.

Superior Court of Pennsylvania.

Argued June 9, 2004.
Filed Feb. 3, 2005.

Thomas J. Michael, Pittsburgh, for appellant.

Barbara J. Shah, Bethel Park, for appellee.

BEFORE: FORD ELLIOTT, TODD and PANELLA, JJ.

OPINION BY PANELLA, J.:

¶ 1 Appellant, Jack Hayward ("Husband") appeals from the order entered on October 8, 2003 by the Honorable Lawrence Kaplan, Court of Common Pleas of Allegheny County, which directed Husband to pay to Appellee, Linda Hayward ("Wife"), various sums in civil service pension arrears and military pension arrears as well as $915.00 per month for Wife's thirty per cent (30 %) share of his civil service pension, and a $249.00 monthly shortfall on the military pension. After careful review, we affirm.

¶ 2 This Court previously summarized the factual and procedural history in an earlier appeal as follows:

The parties were married on December 2, 1963, and separated in May of 1984. The court granted their divorce on October 14, 1986. Husband was an active or reserve member of the military, primarily the United States Army, before, during, and after his marriage to Wife, with the exception of six years, i.e., 1966 through 1972. Husband began to accumulate points, or credits, toward military pension benefits in 1958, and he continued to accumulate points during the time he was in service and the reserves.

Following entry of the divorce decree, the parties negotiated an equitable distribution of marital property resulting in a consent order dated January 11, 1989 (the "consent order") and approved by the court. Relevant to this appeal is paragraph six of the consent order, which reads as follows: 6. [Husband] and [Wife] agree to sign consent orders to be prepared by [Wife's] attorney, in the nature of Qualified Domestic Relations Orders, on both of [Husband's] pensions, military and civil service, segregating to [Wife] a share equal to 50%

of the marital portion of each pension; the relevant dates for these QDRO's are: Date of marriage 12/63; Date of separation 5/84. Consent Order of Court, 6/11/89, at 3–4 (emphasis added).

On March 5, 1990, Wife's attorney mailed to Husband two copies of the QDRO that she prepared pursuant to the above provision of the consent order. Husband did not sign the QDRO, so Wife filed a motion for special relief under the Divorce Code, and the court approved and entered the QDRO on March 26, 1990. Since the QDRO impacted Husband's military pension, it was submitted to the Defense Finance and Accounting Service ("DFAS"), a federal agency, for approval, but the DFAS rejected the QDRO for reasons not clear from the parties' briefs or the record.

¶ 5 Accordingly, Wife's attorney crafted a revised QDRO, but again was unable to obtain Husband's voluntary signature on it. Therefore, Wife presented a motion for entry of a domestic relations order on May 31, 1995. At a hearing on the motion, which Husband did not attend, the trial court approved and entered the QDRO (hereinafter "1995 QDRO"). The DFAS also accepted 1995 QDRO.

¶ 6 On July 26, 2001, more than six years after entry of the 1995 QDRO, Husband presented a motion for special relief from the 1995 QDRO, claiming, inter alia, that Wife's attorney "unilaterally" obtained court approval of the 1995 QDRO, and Husband never received notice of Wife's motion for entry of a domestic relations order or the hearing on May 31, 1995. Husband further assert-

ed the 1995 QDRO failed to comport with the agreed-upon terms of the consent order. Attached to Husband's motion was a proposed order to modify the 1995 QDRO. The trial court held a hearing and, on July 26, 2001, denied Husband's motion. On August 27, 2001, Husband filed a notice of appeal from the court's July 26, 2001 order denying his motion for special relief.

*Hayward v. Hayward,* 808 A.2d 232 (Pa.Super.2002).

■ ¶ 3 In *Hayward,* this Court reversed the order of the trial court, concluding that "the trial court erred by failing to modify the 1995 QDRO to comport with the consent order entered into by the parties in 1989." *Hayward,* 808 A.2d at 236. Specifically, this Court held that the 1995 QDRO "employ[ed] a coverture fraction of 240/240 or one, thereby failing to eliminate from distribution those pension benefits accrued prior to marriage and after separation."[1] *Id.* at 237. The matter was remanded to the trial court to correct the error in the calculation of the marital portion of the pension benefits. *Id.* In the same decision, this Court also granted Wife's application to refer the case to the trial court for enforcement proceedings resulting from Wife's allegations that Husband executed a Veteran's Administration waiver on his military retirement pay in order to bypass the effect of the QDRO. *Id.* at 237–238.

¶ 4 Following remand, a hearing was held before Hearing Officer Patricia Miller on March 21, 2003, after which, on April 4, 2003, Officer Miller filed her Report and Recommendation. Officer Miller deter-

---

1. In calculating the marital portion of pension benefits to be distributed, the trial court employs a coverture fraction which is a fraction "calculated by determining the ratio of the length of marriage to the number of years of employment. The numerator of the frac- tion is the marital period of the employee-spouse's participation in the pension plan; the fraction denominator is the total period of time during which the employee-spouse accrued benefits." *Endy v. Endy,* 412 Pa.Super. 398, 603 A.2d 641, 644 n. 1 (1992).

mined that the parties' intent was to give Wife one-half (50%) of the marital portion of Husband's two retirement benefits, i.e., his civil service retirement benefits and his military pension benefits. Report and Recommendation of Hearing Officer, 04/04/2003. Officer Miller further found that Husband had surreptitiously placed his civil service pension into pay status in 1996, and had also transferred his military pension benefits to VA disability benefits which are not subject to a QDRO. *Id.* In light of Officer Miller's findings, she determined that the only way to make Wife whole was to recommend an award as follows.

1. Within 90 days husband shall pay wife $12,000 as a tax-free payment to wife on civil service pension arrears which, pre-tax, were $50,946 through December 31, 2002. Thereafter, the arrears shall be reduced by $15,000.

2. The parties shall equally share the cost of preparation and qualification of a QDRO for husband's civil service pension such that, effective January 1, 2003, wife will receive 30% of each monthly benefit *plus* an additional payment of $500 per month on the arrears. When the arrears are paid in full, the QDRO shall be modified such that wife receives only 30% of each monthly benefit.

3. Husband shall pay wife as alimony a lump sum payment of $1,724 representing arrears through December 31, 2002 on the military pension. This payment shall be made in full within 30 days. Thereafter, he shall pay wife $249 per month as alimony. This shall not be subject to modification based upon a substantial and material change in circumstances, so long as husband is receiving his VA disability benefits.

*Id.* at 4–5.

¶ 5 Husband timely filed exceptions to this report, and the trial court, after oral arguments and consideration of the parties' respective briefs, determined that Husband's Exceptions should be sustained in part. Trial Court Opinion, 12/23/2003, at 2. Agreeing with Husband that alimony was a remedy unavailable to Wife at this stage of the proceedings, the trial court issued an order giving Wife 30% of the civil service pension as was originally contemplated by the parties' agreement, plus an additional $249.00 per month in arrears owed from the military pension shortfall as well as $500.00 per month in arrears owed to Wife on the civil service pension. *Id.* at 3. This timely appeal followed.

¶ 6 On appeal, Husband presents the following issues for our review:

A. DID THE TRIAL COURT ERR IN FAILING TO CORRECT THE MILITARY DOMESTIC RELATIONS ORDER AND TO CREDIT HUSBAND WITH OVERPAYMENTS?

B. DID THE TRIAL COURT ERR IN CREATING A DISTRIBUTION SCHEME THAT CAUSES HUSBAND TO PAY WIFE'S SHARE FROM VETERANS DISABILITY BENEFITS?

C. DID THE TRIAL COURT ERR IN FAILING TO FIND WIFE IS NOT ENTITLED TO CIVIL SERVICE PENSION BENEFITS FROM 1996 THROUGH THE PRESENT DATE?

D. DID THE TRIAL COURT ERR IN FAILING TO CREDIT APPELLANT WITH THE COST OF HIS EFFORTS TO CORRECT ERRORS REGARDING THE MILITARY AND CIVILIAN DOMESTIC RELATIONS ORDERS?

Brief for Appellant at 5.[2]

¶ 7 Before turning to these issues, we note that our standard for review-

---

2. At this point, we note with displeasure the procedural deficiencies present throughout

ing awards of equitable distribution is well settled. The trial court has broad discretion in fashioning such awards, and we will overturn an award only for an abuse of that discretion. *Isralsky v. Isralsky,* 824 A.2d 1178 (Pa.Super.2003). To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure. *Id.* Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights. *Id.*

¶ 8 The record in the case *sub judice* reveals that the parties executed a consent order on January 11, 1989 in which they agreed that Wife would receive 50% of the marital portion of Husband's civil and military pensions. *See* Consent Order, at ¶ 6, 01/11/1989 (Strassburger, J.). The military retirement benefit was formalized in 1990 when it was incorporated into a QDRO which stated that "[t]he parties agree that their mutual intent is to provide the Alternate Payee with a retirement payment that fairly represents 50% of the marital share of the Retirement Benefit ...." QDRO, at ¶ 12, 3/26/1990 (Strassburger, J.).

■ ¶ 9 With this background in mind, we address Husband's first claim on appeal that the trial court erred in failing to correct the military domestic relations order and to credit Husband with overpayments. Appellant's Brief at 18. While Husband raises this issue in his brief, he fails to cite to any pertinent authority in support of this argument in violation of Pa.R.A.P., Rule 2119. Moreover, Husband fails to make reference to any part of the certified record as to the amount of the alleged overpayment. As this Court has previously noted,

> [i]t is not the duty of the Superior Court to scour the record and act as the appellant's counsel, and we decline to do so. *Andaloro v. Armstrong World Industries, Inc.,* 799 A.2d 71, 87 (Pa.Super.2002) (Pa.R.A.P. 2119(a) requires citation to pertinent authority for an issue to be addressed); *Commonwealth v. A.W. Robl Transport,* 747 A.2d 400, 405 (Pa.Super.2000) (when an issue is not developed in an appellate brief, it will be deemed waived); *In re Child M.,* [452 Pa.Super. 230,] 681 A.2d 793, 799 (1996) (the Superior Court will not scour the record on an appellant's behalf trying to find mistakes by the trial court. It is the appellant's responsibility to precisely identify any purported errors)."

*Dudas v. Pietrzykowski,* 813 A.2d 1, 5 (Pa.Super.2002). As such, we are constrained to find Husband's first argument waived.

¶ 10 Husband next argues that the trial court erred "in considering any part of his disability pension as marital property." Appellant's Brief at 22. We note from the outset that the parties agree that the value of the Military Retirement Benefit is $2,331.00. The parties also agree that the Wife's portion of the marital estate for purposes of the military retirement plan is 14.3% (50% of 28.6%) as was determined

Husband's brief. Husband is in violation of Pa.R.A.P. 2111(a)(2) by failing to include a statement of both the scope of review and the standard of review in his brief. Further, Husband is in violation of Pa.R.A.P. 2111(d) by failing to append a copy of his 1925(b) statement to his brief. However, because Husband's violations of our rules of appellate procedure are not substantial and do not prevent us from reviewing the merits of the issues raised, we will address Husband's claims and furnish the applicable scope and standard of review in our analysis of them. *Ty–Button Tie, Inc. v. Kincel and Co., Ltd.,* 814 A.2d 685, 690, n. 3 (Pa.Super.2002).

by the hearing officer following remand by this Court.[3] Further, Husband agrees that this is Wife's share of the marital portion of the military retirement benefit. Thus, Wife is entitled to 14.3% of $2,331.00, or $333.00, each month. This was the recommendation of the hearing officer and is precisely what the trial court ordered.

¶ 11 To the contrary, Husband argues that Wife should only receive 14.3% of his *disposable* retirement pay. Appellant's Brief at 23. Disposable retired pay is defined by the Uniformed Services Former Spouses' Protection Act ("USFSPA") as the total monthly retired pay to which a member is entitled less certain deductions. 10 U.S.C.A. § 1408(a)(4). Among the amounts to be deducted from the total pay are those amounts which are waived by the retiree in order to receive veterans' disability benefits. *Id.* at §§ (B), (C).

¶ 12 In April of 2002, Husband retired from the military. Shortly thereafter, Husband was rendered partially disabled as a result of elective knee surgery performed to correct an earlier injury. N.T., 03/21/2003, at 97. As a result, Husband receives VA disability benefits in the amount of $2,193.00 per month. *Id.* at 72. It is well settled that any duplication of military benefits is statutorily prohibited. 38 U.S.C.A. § 3105; *Mansell v. Mansell*, 490 U.S. 581, 583, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Therefore, in order to receive disability benefits, a veteran must waive any portion of his military pension that would be duplicative of the disability benefits. 38 U.S.C.A. § 5305.[4] Thus, Husband's military pension was reduced by the amount of the disability benefits he received. However, Husband argues that the trial court erred in awarding Wife a portion of his military disability benefits. In support of this argument, Husband relies on a United States Supreme Court decision which held that "the Former Spouses' Protection Act does not grant state courts the power to treat as property divisible upon divorce military retirement pay that has been waived to receive veterans' disability benefits." *Mansell v. Mansell*, 490 U.S. 581, 594–95, 109 S.Ct. 2023, 104 L.Ed.2d 675 (1989). Noting that its ruling had a harsh effect and that many former spouses would be economically harmed by this literal interpretation of the USFSPA, the United States Supreme Court invited Congress to pass new legislation. *Id.* at 594, 109 S.Ct. 2023.

¶ 13 While we note that this appears to be an issue of first impression in Pennsylvania, numerous other jurisdictions have addressed this issue in one form or another. Several courts have recently ruled that *Mansell* is inapplicable in some cases. Where the post-nuptial agreement contains an indemnification clause wherein the military spouse agrees to indemnify the nonmilitary spouse for any such diminution in retirement pay due to waiver to receive disability benefits, some courts have reasoned that there is no division of disability benefits because the military spouse is free to satisfy the indemnity obligation with assets other than the disability benefits. *See Abernethy v. Fishkin*, 699 So.2d 235, 240 (Fla.1997); *In re Marriage of Strassner*, 895 S.W.2d 614, 617–18 (Mo.App. E.D. 1995); *Owen v. Owen*, 14 Va.App. 623, 419

---

**3.** Neither party raised an exception to this calculation. As such, any claim that the marital portion of the military pension should be either more or less is deemed waived. *See* Hearing Officer's Report and Recommendation, 04/04/2003, at 2.

**4.** Disability benefits are beneficial to a military retiree as they are nontaxable, entitle a disabled veteran to educational assistance, and entitle a disabled veteran to have his disability treated at a VA hospital. 38 U.S.C.A. §§ 3102, 3500, 5301(a).

S.E.2d 267, 269 (1992). The *Abernethy* court explained that "while federal law prohibits the division of disability benefits, it does not prohibit spouses from entering into a property settlement agreement that awards the non-military spouse a set portion of the military spouse's retirement pay." *Abernethy*, 699 So.2d at 240. The same result has been reached in the absence of an express indemnity agreement. *See McHugh v. McHugh*, 124 Idaho 543, 861 P.2d 113, 115 (Ct.App.1993).

¶ 14 Several persuasive cases that hold *Mansell* inapplicable closely parallel the facts of the case *sub judice*. In *In re Marriage of Gahagen*, 690 N.W.2d 695, 2004 WL 1813601, *1 (Iowa App.2004), the Court of Appeals of Iowa held that "a military ex-spouse's post-decree election to waive some or all of a military pension in order to collect veterans' disability benefits constitutes a unilateral and extrajudicial modification of the decree" and therefore "[s]uch action results in the nonmilitary ex-spouse being deprived of benefits granted by the dissolution decree." *Id.* at *5, (internal quotations omitted); *see also In re Marriage of Gaddis*, 191 Ariz. 467, 957 P.2d 1010, 1013 (App.1997) (holding that by voluntarily waiving retirement benefits after receiving civil service employment, husband deliberately frustrated the judgment for dissolution, and thus the order need only avoid specifying an improper source of funds for the payments to be in conformity with *Mansell*). In *In re Marriage of Nielsen*, 341 Ill.App.3d 863, 275 Ill.Dec. 369, 792 N.E.2d 844 (2003) the Illinois appellate court held that the former wife was entitled to an amount equal to twenty-five percent of the military pension as it existed on the date of retirement, and that because the trial court's order did not directly assign the former husband's disability pay it did not offend *Mansell*; out of caution, the court remanded for further proceedings for the trial court to determine whether the military spouse could satisfy his obligation with assets other than his disability benefits to ensure conformity with *Mansell*. *Id.* 275 Ill.Dec. 369, 792 N.E.2d at 849; *see also In re Marriage of Krempin*, 70 Cal.App.4th 1008, 83 Cal.Rptr.2d 134, 142–43 (1999) (concluding that if the parties' intent was that the nonmilitary spouse receive a share of the military spouse's total retirement pay, enforcing the divorce decree as it had been intended would not offend *Mansell* so long as the military spouse would be able to satisfy his obligation with assets other than his disability benefits). The Tennessee Supreme Court held that when a judgment for dissolution divides military retirement benefits, a nonmilitary spouse has a vested interest in his or her portion of those benefits as of the date of the court's decree, and consequently the vested interest cannot be unilaterally diminished by an act of the military spouse to elect waiver. *Johnson v. Johnson*, 37 S.W.3d 892, 897–98 (Tenn.2001).

¶ 15 In this case, the trial court recognized that an order requiring Husband to make a payment to Wife out of the VA disability benefits would have been improper under *Mansell*, therefore the trial court ordered that any shortfall had to be paid from the civil service retirement pension. *See* Order, 10/08/2003. The trial court reasoned that Husband had the ability to pay Wife's portion of the military pension from his civil service pension because he had been receiving 100% of the civil service pension despite the Consent Order entered in 1989. *See* Trial Court Opinion at 4. The record is clear that Husband had agreed to pay Wife 50% of his military retirement benefit. *See* Consent Order; QDRO. The parties did not specifically limit this agreement to *disposable* retirement pay. There is no mention of *disposable* retirement pay in either the

consent order or the QDRO. Wife bargained for 50% of the marital portion of Husband's civil[5] and military retirement benefits and Husband agreed to pay those amounts. Therefore, the trial court correctly decided that Husband was bound by his agreement to pay 50% of the marital portion of his military and civil retirement benefits, even though it may have to be paid from other available funds. As we are persuaded by the rationale utilized by the courts in *Gahagen, Nielsen* and *Johnson, supra*, we find no abuse of discretion by the trial court.

¶ 16 Husband's next claim on appeal is that the trial court erred in finding that Wife is entitled to civil service pension benefits dating back to 1996. This issue was not included in Husband's Statement of Matters Complained of on Appeal, and therefore was not addressed by the court below in its 1925(a) opinion. This issue is therefore deemed waived. Pa.R.A.P., Rule 1925(b), 42 Pa. Cons. Stat. Ann.; *Yoder v. American Travellers Life Ins. Co.*, 814 A.2d 229 (Pa.Super.2002), *appeal denied*, 573 Pa. 673, 821 A.2d 588 (2003).

¶ 17 Finally, Husband claims on appeal that the trial court erred in not holding Wife responsible for some or all of the expenses Husband claims to have incurred as a result of Wife's actions or lack thereof. Appellant's Brief at 29. Husband again fails to cite to any pertinent legal authority in support of his claim, in violation of Pa.R.A.P., Rule 2119(a). We note further that Husband fails to provide a reference to the certified record for the dollar amount of his alleged unfair expenses, again in violation of Pa.R.A.P., Rule 2119(c). The hearing officer refused to admit into evidence Husband's attorney's bill because Husband failed to comply with the provisions of the pretrial order. N.T., 03/21/2003, at 91–93. Husband failed to file an exception to the Hearing Officer's refusal to admit the attorney's bill into the record. *See* [Husband's] Exceptions to Report and Recommendations, 04/14/2003, at 1–4. In order to preserve an issue for appeal, a party must make an exception to the Hearing Officer's report. Pa.R.C.P., Rule 1920.55–2(b), 42 Pa. Cons. Stat. Ann.; *Blatz v. Blatz*, 412 Pa.Super. 449, 603 A.2d 666 (1992). Therefore, this issue is deemed waived.

¶ 18 Accordingly, after a thorough review of the record in the case *sub judice*, we conclude that Husband and Wife agreed to equally share the marital portion of the military and civilian retirement benefits without regard to any waivers or offsets that might someday apply. As such, we must affirm the order of the trial court.

¶ 19 Order affirmed.

---

**5.** The parties agree that the marital portion of the civil retirement benefit is 60%. See Hearing Officer's Report, 04/04/2003 at 2; N.T., 03/21/2003 at 82.