**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| RICKY W. BLOOM | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellant | |
| v. | |
| REBECCA L. BLOOM | |
| | No. 1443 WDA 2016 |

Appeal from the Order September 8, 2016
In the Court of Common Pleas of Fayette County
Civil Division at No(s): 255 OF 1991, G.D.

BEFORE:  BENDER, P.J.E., BOWES AND STRASSBURGER,* JJ.

MEMORANDUM BY BOWES, J.:                                    **FILED JULY 31, 2017**

Ricky W. Bloom ("Husband") appeals the September 8, 2016 order granting, in part, Rebecca L. Bloom's ("Wife") petition for enforcement of divorce settlement agreement and for counsel fees.  We affirm.

The facts underlying this matter are not in dispute.  Husband and Wife were married on April 22, 1972.  Husband served in the Army for the majority of the marriage, having re-entered service in November of 1973, and retired in December of 1991.[1]  Following their separation, Husband and Wife entered into a divorce settlement agreement, which provided, *inter alia*, that Wife would receive one-half of Husband's Army retirement pay for life.

_____

[1] Husband was drafted into the Army in October of 1969, but left the service two years later in October of 1971.

_____

*  Retired Senior Judge assigned to the Superior Court.

The court entered a divorce decree on March 5, 1992, incorporating that document. Thereafter, Husband retired from the Army, and Wife received monthly payments of $656.50 from Husband's military retirement pay from 1992 until January of 2012.

In 2009, following an annual physical and psychiatric consultation, Appellant was declared totally disabled and was required to resign from the high school teaching position he held at that time. In December 2011, Husband decided to forego his monthly retirement benefits in order to receive tax-exempt payments through the Combat Related Service Connected Disability ("CRSC") program. In order to do so, Husband waived his right to the entirety of his military retirement payments. In February 2012, as a result of Husband's decision to wholly waive his retirement benefits, the monthly payments to Wife ceased.

On February 1, 2016, Wife filed a petition for enforcement of divorce settlement agreement and for counsel fees, contending that Husband's cessation of the monthly payment to her violated the terms of their accord. After a hearing on the matter, the trial court ordered Husband to reinstitute the previously agreed upon monthly payments, plus an additional $100.00 per month towards $36,107.50 in back payments which accrued between 2012 and 2016. The court denied Wife's request for counsel fees. Husband filed a timely notice of appeal and complied with the court's order to file a Rule 1925(b) concise statement of errors complained of on appeal. The

court authored a Rule 1925(a) opinion. This matter is now ready for our consideration.

Appellant raises three questions for our review:

A. Did the lower court err in finding that [Wife] was entitled to receive payments of a portion of [Husband's] CRSC military disability benefits pursuant to a divorce settlement agreement that the parties had entered into in January of 1992?

B. Did the lower court err in failing to find the doctrine of laches precluded [Wife] from entitlement to a resumption of payments from [Husband], or, in the alternative, assuming arguendo that she was entitled to a resumption of payments, that it was improper to date that resumption of payments retroactively to January of 2012?

C. Did the court err in failing to find that the relief sought by [Wife] was barred by the statute of limitations?

Husband's brief at 4 (capitalization omitted).

For ease of disposition, we evaluate Husband's issues in reverse order. In his third issue, Husband contends that Wife's petition to enforce the divorce settlement agreement was barred by the statute of limitations. We note that "[a] question regarding the application of the statute of limitations is a question of law." ***K.A.R. v. T.G.L***, 107 A.3d 770, 775 (Pa.Super. 2014) (citation omitted). The statute of limitations applicable to a contract is four years. ***Id***.; 42 Pa.C.S. § 5525(a)(8). Simply, Husband asserts that Wife filed her petition more than four years after Husband allegedly breached the settlement agreement. As such, he concludes that this matter was barred by the statute of limitations.

J-S39021-17

Upon review of the record, we find Husband is not entitled to relief. It is undisputed that Wife's last payment was received in January 2012. Thus, Wife's claim that Husband breached their agreement did not materialize until February 2012, when Wife's February monthly payment was not made. Wife instituted this proceeding by filing a petition for enforcement of the divorce settlement agreement on February 1, 2016, within the four year statute of limitations provided by law.[2] Thus, Wife's complaint was not barred by the applicable statutory period.

Next, Husband contends that Wife's suit was barred by the doctrine of laches. We observe that, "[u]nlike the application of the statute of limitations, exercise of the doctrine of laches does not depend on a mechanical passage of time." *Fulton v. Fulton*, 106 A.3d 127, 131 (Pa.Super. 2014). Rather, "the doctrine of laches may bar a suit in equity where a comparable suit at law would not be barred by an analogous statute of limitations." *Id*. We have previously described the defense of laches as follows:

_____

[2] Wife rebuts Husband's contention arguing that the parties' agreement constituted a continuing contract, which would not be subject to the four year statute of limitations. *See Crispo v. Crispo*, 909 A.2d 308, 313 (Pa.Super. 2006) (noting, "[w]hen a contract is continuing, the statute of limitations will run either from the time when the breach occurs or when the contract is in some way terminated."). Since we find that Wife's petition was timely filed in any case, we need not determine whether the parties' agreement constituted a continuing contract.

- 4 -

Laches is an equitable doctrine which bars relief when the complaining party is guilty of want of due diligence in failing to promptly institute the action to the prejudice of another. In order to prevail on an assertion of laches, respondents must establish: a) a delay arising from petitioner's failure to exercise due diligence; and b) prejudice to the respondents resulting from the delay. The question of laches is factual and is determined by examining the circumstances of each case. Prejudice in the context of a claim of laches means that the party must change his position to his detriment in order to invoke laches.

*In re Estate of Aiello*, 993 A.2d 283, 287 (Pa.Super 2010) (internal citations omitted).

Specifically, Husband emphasizes Wife's four-year delay in instituting an action against him. He asserts that Wife provided no explanation for that delay, and he contends that he was prejudiced since he is unemployed and had otherwise "organized his financial affairs around the income he has been receiving throughout that period of time." Husband's brief at 25. Husband also stresses the trial court's award of damages as evidence that he was prejudiced by Wife's lack of diligence, since he now owes Wife back payments which he previously considered as income. In the alternative, Husband states that, assuming this matter is not barred by laches, then the trial court erred in calculating Wife's arrearages to the date his payments ceased.

At the outset, we find that Husband has neither developed an argument nor cited a single legal authority in support of his position that the court erred in its assessment of damages calculated from February 2012.

Husband's brief at 25. Hence, that claim is waived. ***In re Estate of Whitley***, 50 A.3d 203 (Pa.Super. 2012) (observing, "[t]his Court will not consider the merits of an argument which fails to cite relevant case or statutory authority," and "[f]ailure to cite relevant legal authority constitutes waiver of the claim on appeal.") (citations omitted).

Turning to Husband's allegation that laches should bar Wife's suit, we find that the trial court did not err in determining that it did not apply. We have long held that "he who seeks equity must do equity." ***Aiello***, ***supra*** at 288 (citation omitted). That is, "[a] party seeking equitable relief must come before the court with clean hands." ***Id***. Equitable relief is not available to a party who, to the detriment of the other party, has engaged in bad conduct related to the matter at hand. ***Id***. As discussed further *infra*, Husband's violation of the party's settlement agreement created his sudden influx of income. He cannot now rely on the benefit of that breach to assert that he was prejudiced by Wife's delay. Thus, no relief is warranted.

Finally, we turn to Husband's first issue. When we review a trial court's decision to enforce a settlement agreement, we are guided by the following:

> our scope of review is plenary as to questions of law, and we are free to draw our own inferences and reach our own conclusions from the facts as found by the court. However, we are only bound by the trial court's findings of fact which are supported by competent evidence. The prevailing party is entitled to have the evidence viewed in the light most favorable to its position. Thus, we will only overturn the trial court's decision when the factual

- 6 -

findings of the court are against the weight of the evidence or its legal conclusions are erroneous.

**Salsman v. Brown**, 51 A.3d 892, 893-894 (Pa. Super. 2012) (citation omitted).

This Court previously discussed the interplay of the federal and state laws at issue herein:

> The Uniform Former Spouses' Protection Act [("The Act")] . . . refers to military retirement pay as "disposable retired pay" and defines that term as: "the total monthly retired pay to which a member is entitled less amounts which . . . (B) are deducted from the retired pay of such member as a result of . . . waiver of retired pay required by law in order to receive compensation under title 5 or title 38 [(Veterans Affairs)]." 10 U.S.C. § 1408(a)(4)(B). To prevent duplication of benefit payments, a retired service member may only receive [Veterans Affairs] benefits if he waives a corresponding amount of disposable retired pay. 38 U.S.C. §§ 5304-5305. The Act further provides that a service member's "disposable retired . . . pay" may be treated "as property solely of the member or as property of the member and his spouse in accordance with the law of the jurisdiction." 10 U.S.C. § 1408(c)(1). In Pennsylvania, disposable retired pay is classified as marital property, divisible upon divorce.

**Morgante v. Morgante**, 119 A.3d 382, 387 (Pa.Super. 2015) (internal citations and footnotes omitted). We observed that neither federal nor Pennsylvania law considers the portion of military retirement pay waived by a retiree to receive veterans' affairs disability benefits as "disposable retired pay." **Id**. Hence, the sum of the retirees' retirement pay subject to equitable distribution as marital property cannot include those amounts waived to receive such disability pay. **See also Mansell v. Mansell**, 490

U.S. 581 (1989) (holding that the Act does not accord state courts the power to treat retirement pay waived to receive disability benefits as divisible property on divorce and finding that federal law prohibited attachment of veterans' disability benefits).

The relevant provision of the parties' divorce settlement agreement reads: "[Wife] will receive one half of [Husband's] retirement pay from the U.S. Army for as long as she lives. Upon [Husband's] death, [Wife] will be provided for by the Survivor's Benefit Plan. Upon [Wife's] death, should it precede [Husband's], her half of the retirement money will split between [the parties' two children]." Divorce Settlement Agreement, 1/10/92, at ¶ 1. Instantly, pursuant to the above-settlement agreement, Wife received monthly payments of $656.50 taken directly from Husband's military retirement pay. When Husband elected to receive CRSC disability benefits, he waived his entitlement to the entirety of those retirement payments. Thus, the source of disposable retired pay, to which Wife's monthly payment was attached, was completely depleted and her monthly payments ceased.

The trial court determined that Husband's election of CRSC benefits in lieu of his retirement payments amounted to "a 'unilateral and extrajudicial modification of the decree,' depriving [Wife] of the bargained-for benefits included in the divorce decree." Trial Court Opinion, 9/8/16, at unnumbered 5 (citing **Hayward v. Hayward**, 868 A.2d 554, 560 (Pa.Super. 2005)). It observed that, "so long as the court's order avoids specifying an 'improper

source of funds' for payments to be made in conformity with the decree, there will be no violation of [**Mansell**, **supra**]." **Id**. Hence, it concluded that Husband breached a valid contract when he unilaterally changed the source of his monthly benefits so that Wife no longer received her share of his retirement funds. The court determined that Wife was entitled to receive the benefit of the bargain, but refrained from attaching Wife's payments to Husband's CRSC benefits. Instead, it ordered Husband to pay Wife the damages flowing from his breach of contract.

In support of his position, Husband attempts to distinguish this case from **Hayward**, **supra**. In **Hayward**, the parties, following entry of a divorce decree, entered into an equitable distribution agreement which provided the wife with fifty percent of the marital portion of her ex-spouse's military and civil service pensions. The agreement resulted in a consent order which was later converted into a qualified domestic relations order ("QDRO"). Although the husband did not sign the QDRO or attend the hearing on the matter, the court approved and entered the QDRO after the wife filed a motion for special relief. The husband later contested the entry of the QDRO, but the court denied relief. The husband appealed.

On appeal, this Court remanded the matter since the trial court had employed an improper coverture fraction in calculating the benefits which accrued prior to marriage and after separation. On remand, the court corrected that error and, additionally, granted a motion by the wife

requesting a hearing on a new allegation that the husband had waived his military retirement pay to receive disability payments in order to avoid the effect of the QDRO.

A hearing on the wife's allegation was held before a hearing officer. The hearing officer found that the husband had waived his military retirement for an improper purpose and ordered him, in part, to pay the wife a lump sum for arrearages and $249 per month as alimony in lieu of his military pension. After the husband filed exceptions, the trial court held that alimony was not available as a remedy at that juncture, but nevertheless, granted the wife $249 per month in arrears owed from the military retirement payments. The husband again appealed to this Court.

Of import here, the husband in **Hayward** argued on appeal that the trial court erred in directing him to reimburse the wife from his veterans' disability benefits. We noted that the value of the husband's military retirement benefits was not in dispute, and that the trial court had calculated the wife's monthly payments at the rate agreed upon by the parties. Nevertheless, the husband alleged that the court erred in this regard, since the wife's payments should not reflect a percentage of his total retirement payments, but a percentage of his disposable retired pay, which, as defined by the Act, did not include the amount of retirement pay he waived in order to receive veterans' disability pay.

In **Hayward**, we observed that the husband's argument raised a question of first impression in Pennsylvania. Upon reviewing a number of cases from other jurisdictions that had addressed the issue, we were persuaded by the rationale employed by those courts. We found that the parties' agreement was not limited to "disposable retirement pay," and that the wife "bargained for 50% of the marital portion of [the husband's] civil and military retirement benefits and [the husband] agreed to pay those amounts." **Hayward**, **supra** at 560-561. Hence, we concluded that the husband was "bound by his agreement to pay 50% of the marital portion of his military and civil retirement benefits, even though it may have to be paid from other available funds." **Id**. at 561. **See In re Marriage of Gahagen**, 690 N.W.2d 695 (Iowa Ct. App. 2004) (unpublished memorandum at *5) (holding "a military ex-spouse's post-decree election to waive some or all of a military pension in order to collect veterans' disability benefits constitutes a 'unilateral[] and extrajudicial []' modification of the decree."); **In re Marriage of Krempin**, 83 Ca.Rptr.2d 134 (Cal. Ct. App. 1999) (observing, "If the trial court were to conclude that the parties intended for appellant to continue to receive her original share of respondent's retirement pay even if he waived all or a portion of that pay to obtain disability benefits, the **Mansell** case would not prevent the court from giving appellant the benefit of her bargain[.]").

Herein, Husband contends that **Hayward** is inapposite. He asserts that, unlike in **Hayward**, this matter did not arise from a consent order or QDRO. Thus, he alleges that his waiver did not constitute a "unilateral and extrajudicial modification of the decree[.]" Husband's brief at 16. Husband claims that the parties' settlement agreement was not drafted with the aid of counsel, and that it was not made part of any consent order or "any other document which reflected the Court's imprimatur." **Id**. Moreover, he notes that, in some of the cases relied on by this Court in **Hayward**, the military spouse intentionally acted to frustrate the settlement agreement. He claims that he did not know the consequences of his waiver, and therefore, he did not intentionally breach the agreement. Rather, he maintains that he elected to receive CRSC benefits because it bore him a slight financial advantage. Finally, Husband argues that, in the cases relied upon by this Court in **Hayward**, the military spouses had other sources of income to satisfy the courts equitable remedy. He insists that this case is distinguishable since "no such sources for payment to Wife were identified in the record of the instant case." **Id**. at 17.

We are not persuaded by the distinctions advanced by Husband. In **Hayward**, **supra**, we found the trial court did not abuse its discretion when it fashioned an equitable remedy in favor of the wife. We emphasized that the parties had entered into a valid agreement providing the wife with a share of the husband's retirement payments, that the agreement did not

specifically apply to disposable retirement pay, and that the husband had made a unilateral, extrajudicial decision affecting the wife's share. We determined that the husband was bound by his contract, and that he was liable for payments to the wife equaling fifty percent of his military retirement benefits.

Instantly, Husband and Wife entered into a divorce settlement agreement that guaranteed that Wife would receive one-half of Husband's military retirement pay for life. Contrary to Husband's assertion, that document was incorporated into the divorce decree. Decree in Divorce, 3/5/92, 255 G.D. 1991, ("The Court hereby incorporates by reference the terms of the parties' separation agreement filed of record at above number and term."). Further, the agreement does not specifically reference Husband's disposable retired pay, but rather, ensures that Wife receive a share of Husband's "retirement pay from the U.S. Army." Divorce Settlement Agreement, 1/10/92, at ¶ 1. Thus, we find that *Hayward*, *supra*, controls the disposition of this matter, and that the trial court did not err in fashioning an equitable remedy providing Wife with the benefit of the bargain, that is, an amount equaling fifty percent of Husband's retirement pay.

Lastly, we find the trial court was not obligated to specify a source of income from which the payments owed to Wife were to originate. Husband insists that the court cannot avoid the United States Supreme Court's

holding in **Mansell**, **supra**, by merely ensuring that Husband's disability benefits are not attached. He claims that the record must disclose a viable separate source of income, and that the record does not contain evidence that Husband possesses such a source.

**Mansell**, **supra**, does not stand for the proposition that the trial court must determine that a party **can** satisfy his contractual obligations, but only that such satisfaction cannot be attached directly to the party's military disability pay. Although some courts have utilized alternative sources of income in rendering an equitable judgment, we find no language in **Mansell** which mandates such a finding. Thus, Husband is not entitled to relief.

In sum, we find that the trial court did not err in granting Wife's motion to enforce the parties' divorce settlement agreement and in directing Husband to pay Wife $656.60 per month pursuant to that agreement, plus an additional $100 per month towards outstanding arrearages.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 7/31/2017