J-A20028-18

NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37

| | | |
|---|---|---|
| R.D.L., | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| J.T.M. | : | No. 497 WDA 2018 |

Appeal from the Order Entered March 8, 2018
in the Court of Common Pleas of Westmoreland County,
Civil Division at No(s):  369 of 2017-D

BEFORE:  BENDER, P.J.E., LAZARUS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:               FILED DECEMBER 27, 2018

R.D.L. ("Father") appeals from the March 8, 2018 Custody Order granting J.T.M. ("Mother") sole legal and primary physical custody of their minor daughter, V.L.M. ("Child") (born in December 2016), and granting Father supervised partial custody.  We affirm.

On March 6, 2017, Father filed a Complaint for custody against Mother,[1] seeking shared legal custody and primary physical custody of Child.  The trial court scheduled a custody conciliation conference for April 27, 2017.  Father thereafter filed a Motion for an expedited custody conciliation conference, arguing that he had not had any contact with Child since her birth.  The trial court rescheduled the custody conciliation, and granted Father three hours of supervised partial physical custody, three days per week, pending the custody conciliation.

_____

[1] Father and Mother are not married.

With consent of the parties, the trial court continued the custody conciliation to May 30, 2017. A hearing officer conducted the custody conciliation, at which Mother and Father were both present and represented by counsel. Based upon the hearing officer's recommendation, the trial court entered an Order on June 2, 2017, granting Mother shared legal and primary physical custody of Child, and granting Father shared legal and supervised partial physical custody from 10:00 a.m. to 2:00 p.m. daily.

Father filed a Praecipe for Pretrial Conference on June 12, 2017. The trial court scheduled a pretrial conference, and directed both parties to file a pretrial narrative. Mother and Father timely complied. Additionally, Father filed a Petition for Contempt on July 12, 2017, asserting that Mother took Child to the doctor without consulting with him or providing him with any information about the appointment. On August 9, 2017, following a combined pretrial conference and hearing on the Petition for Contempt, the trial court dismissed Father's Petition for Contempt, and ordered Father and Mother to submit to a psychological evaluation through King & Associates, Inc.

Mother and Father each filed a revised Pretrial Narrative in November 2017. Mother subsequently filed a Motion to Strike the narrative portion of Father's Pretrial Narratives, and to remove it from social media postings, indicating that Father had attached the narrative to a GoFundMe account seeking funds for the custody litigation. The trial court considered Mother's Motion to Strike, as well as Father's oral motion to strike the requested stipulation of facts (i.e., "Father suffers from significant mental instability")

from Mother's Pretrial Narrative, at the start of trial. The trial court granted in part Mother's Motion to Strike, ordering that the identical narrative portions of Father's Pretrial Narratives be stricken from the record, and granted Father's oral motion.[2]

The trial court conducted a four-day custody trial, which took place between December 2017 and February 2018.[3] On March 8, 2018, the trial court entered its Opinion and Order, granting Mother sole legal and primary physical custody of Child, and granting Father supervised partial custody. The trial court also ordered that Mother and Father share custody on holidays, and set forth a holiday custody schedule to be used in the event that Mother and Father could not otherwise reach an agreement. Additionally, the trial court ordered both Father and Mother to submit to a drug and alcohol evaluation and follow any recommended courses of treatment, and ordered Father to submit to a psychiatric evaluation and follow all recommended courses of

_____

[2] The trial court entered an Order to that effect on December 18, 2017.

[3] After the first two days of trial, the trial court scheduled two additional trial dates in February 2018, and entered an Interim Order granting Father daily periods of physical custody from 9:30 a.m. to 2:30 p.m. On January 23, 2018, Father's counsel filed a Motion to Withdraw Appearance, stating that Father had indicated his intent to proceed pro se or to hire new counsel. The trial court granted counsel's Motion, and Father proceeded pro se for the remainder of the trial.

treatment. Father, through counsel, filed a timely Notice of Appeal.[4]

Father now raises the following issues for our review:

I. Whether the trial court erred by relying upon the lay opinion of a party as to "mental health issues" of the other party, even though mental health assessments conducted by a mental health professional were supplied to the court for each party to the contrary?

II. Whether the trial court erred in relying upon its own judgment rather than the mental health assessments generally[,] and specifically wherein Mother was found to have "demonstrated some traits of bipolar mania" and the assessor "recommended that Mother" and NOT Father "participate in a substance abuse assessment and follow any treatment recommendations"?

III. Whether the trial court erred in relying upon its own lay judgment rather than the professional mental health witness, wherein it is reported that "[Father] is a man who presents with no significant mental health issues...", in making its [O]pinion and ordering that [Father] submit to a <u>psychiatric</u> evaluation immediately...[,]" [] and limiting Father's custody?

IV. Whether the trial court erred in relying upon allegation(s) in a temporary protection for abuse petition and even misstated the same in [its] [O]pinion?

Father's Brief at 10-11 (emphasis in original, issues renumbered, some capitalization omitted).

_____

[4] This Court entered an Order on April 19, 2018, indicating that Father had failed to file a concise statement of errors complained of on appeal with his Notice of Appeal, as required by Pa.R.A.P. 1925(a)(2). This Court therefore directed Father to file a concise statement in the trial court by April 30, 2018, and to file a copy with the Superior Court Prothonotary, or, if a concise statement had already been filed in the trial court, to submit a copy to the Prothonotary. Father subsequently filed a Concise Statement, a copy of which was received by this Court on April 25, 2018. The following day, this Court entered an Order discharging its April 19, 2018 Order.

In custody cases under the Child Custody Act, 23 Pa.C.S.A. §§ 5321-5340, our standard of review is as follows:

> We review a trial court's determination in a custody case for an abuse of discretion, and our scope of review is broad. Because we cannot make independent factual determinations, we must accept the findings of the trial court that are supported by the evidence. We defer to the trial [court] regarding credibility and the weight of the evidence. The trial [court]'s deductions or inferences from its factual findings, however, do not bind this Court. We may reject the trial court's conclusions only if they involve an error of law or are unreasonable in light of its factual findings.

C.A.J. v. D.S.M., 136 A.3d 504, 506-07 (Pa. Super. 2016) (citation omitted).

Additionally,

> [t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

Ketterer v. Seifert, 902 A.2d 533, 540 (Pa. Super. 2006) (citation omitted).

In any custody case, the primary concern is the best interests of the child. See 23 Pa.C.S.A. §§ 5328, 5338; see also W.C.F. v. M.G., 115 A.3d 323, 326 (Pa. Super. 2015). In assessing the child's best interest, the trial court must consider the best interest factors, set forth in Section 5328(a) as follows:

§ 5328. Factors to consider when awarding custody

(a) Factors.—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant

factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, education and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328. "All of the [best interest] factors … are required to be considered by the trial court when entering a custody order." J.R.M. v. J.E.A., 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis omitted). Additionally, when a trial court awards custody, it "shall delineate the reasons for its decision on the record in open court or in a written opinion or order." 23 Pa.C.S.A. § 5323(d).

Father first argues that the trial court ignored the mental health evaluations, and instead improperly relied on its own opinions and Mother's lay opinion that Father suffers from serious mental health issues. See Father's

Brief at 21-23.[5]

In its Opinion and Order, the trial court addressed subsection (15), concerning the mental and physical condition of a party or member of a party's household, as follows:

> Father's mental health evaluation describes a "mild to moderate level of psychological dysfunction."[6] [The trial c]ourt, with the benefit of a copious amount of evidence and information unavailable to the evaluator, has serious concerns that this dysfunction goes beyond even "moderate." The first aspect leading the [c]ourt to this conclusion is Father's single-minded and entirely obsessive hatred of Mother. Additionally, Father admits

---

[5] In his second and third claims, Father similarly contends that the trial court ignored the mental health assessments, and improperly relied on Mother's and its own opinions. See Father's Brief at 25-30. However, Father failed to include any citations to relevant legal authority in support of these claims. See Pa.R.A.P. 2119(a) (stating that the argument shall include "such discussion and citation of authorities as are deemed pertinent."). Thus, to the extent that Father's second and third claims differ from his first claim, they are waived. See Hayward v. Hayward, 868 A.2d 554, 558 (Pa. Super. 2005) (concluding that appellant's failure to cite any pertinent authority in support of his argument resulted in waiver of his claim).

[6] At trial, the trial court heard the testimony of Cynthia L. King, MSSA, LCSW ("King"), who conducted the court-ordered psychological evaluations of Father and Mother. The evaluations included a review of the Adult Historical Information Form completed by each party, the results of the Millon Clinical Multiaxial Inventory-III ("MCMI-III"), and a clinical interview with each party. See Plaintiff's Exhibits 1 (Mental Health Assessment (Father)), 2 (Mental Health Assessment (Mother)). With regard to Father, King testified that, based on her evaluation, Father "presents with a mild to moderate level of psychological dysfunction." N.T., 12/12/18, at 86; see also Plaintiff's Exhibit 1 (Mental Health Assessment (Father)), at 4. King explained that, based on the MCMI-III, Father showed elevated levels of compulsive and narcissistic personality components. See N.T., 12/12/18, at 81-82; see also Plaintiff's Exhibit 1, at 5. King also testified that although Father has some psychological dysfunction, that "does not necessarily translate into a mental health illness or disorder," and Father presents with no significant mental health issues. N.T., 12/12/18, at 86-87; see also Plaintiff's Exhibit 1, at 5.

to a longstanding history of apparently untreated major depression, and this is borne out through various text messages included in Defendant's Exhibit A. Father spoke at length about experiencing a "psychotic break" and losing touch with reality on numerous occasions. At one point in time, Father even sent Mother a picture of him holding a gun to his own head, which he subsequently ordered her to delete from her phone.

Most concerningly, it was also adduced through evidence and testimony that Father believes he is currently the target of some form of demonic possession, controlled at times by a force Father names only as "He." Text messages found in Defendant's Exhibit A indicate that Father believes that "He" sometimes speaks to him, and at other times controls his actions and thoughts entirely. Father describes this as being "incomporeally (sic) occupied by someone else." Father has intimated through text message to Mother that "He" is the real father of [Child]. Father does not deny any of these assertions, but merely alleges that Mother tricked him into believing in "demonic attachment." The [c]ourt finds Father's mental health to be a paramount concern with regard [to] his ability to safely care for [Child], and upon careful deliberation, the [c]ourt does not feel that it is appropriate for Father to have unsupervised time with [Child] until his mental health issues are addressed, diagnosed and appropriately managed through a licensed treatment provider.

Mother's mental health evaluation provided no concerns of particular note. No other persuasive evidence was provided which would bring into question Mother's mental or physical condition, or that of any of her household members. As such, this factor heavily favors Mother.

Opinion and Order, 3/8/18, at 10-11 (footnote added). Contrary to Father's assertion, it is evident from the foregoing that the trial court considered trial testimony and exhibits entered into evidence in addition to, rather than in lieu of, the mental health evaluation performed by King. To the extent that Father asks us to re-weigh the testimony and evidence presented at trial, we are unable to do so. C.A.J., 136 A.3d at 506.

- 9 -

Additionally, we note that the mental and physical condition of a party or member of a party's household is just one of the seventeen factors enumerated in Section 5328 for the trial court to consider when awarding custody. The trial court adequately considered and addressed each of these factors in its Opinion and Order. See Opinion and Order, 3/8/18, at 2-11. The trial court specifically determined that each of the factors either favors Mother, or favors neither party. See id. Father has failed to explain how a finding in his favor as to subsection (15) would change the outcome of this case, in light of the trial court's findings regarding the remaining factors. Because we discern no abuse of discretion by the trial court with regard to its consideration of subsection (15), Father is not entitled to relief on this claim.

In his final claim, Father points out that the Child Custody Act utilizes the definition of "abuse" set forth in the Protection from Abuse Act, 23 Pa.C.S.A. § 6102. Father's Brief at 24. Father acknowledges that Mother had filed two protection of abuse ("PFA") Petitions, but contends that there was no final order finding abuse regarding either PFA at the time of trial. Id. Father therefore argues that the trial court erred by relying on a finding of abuse in its consideration of the factors set forth in subsections (2), (3), (8) and (13). Id. at 25.

Father failed to provide an adequate discussion of this claim with citations to relevant legal authority. Father also failed to explain whether the trial court's determinations under subsections (2), (3), (8) and (13) would

favor him without consideration of allegations contained in the PFA Petitions, or whether findings in his favor regarding these subsections would change the outcome of this case. Because Father failed to adequately develop this claim, it is waived. See Pa.R.A.P. 2119(a); see also Lackner v. Glosser, 892 A.2d 21, 29 (Pa. Super. 2006) (stating that "arguments which are not appropriately developed are waived."); Bombar v. West Am. Ins. Co., 932 A.2d 78, 93 (Pa. Super. 2007) (stating that "[t]his Court will not act as counsel and will not develop arguments on behalf of an appellant.").

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/27/2018