J-A18039-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MING LIANG LI, | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LIXIA PAN | : | No. 93 WDA 2019 |

Appeal from the Decree Entered December 19, 2018
in the Court of Common Pleas of Allegheny County
Family Court at No(s):  FD-16-007099-008

BEFORE:  BOWES, J., NICHOLS, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                **FILED SEPTEMBER 30, 2019**

Ming Liang Li ("Husband") appeals from the Order equitably distributing the marital assets of Husband and Lixia Pan ("Wife"), which was made final by the entry of the December 19, 2018 Divorce Decree.  We affirm.

Husband and Wife married on August 3, 2014, in a traditional Chinese wedding ceremony, in New York.  During the wedding, Husband and Wife received over $135,000.00 in U.S. currency, Chinese currency (RMB) worth approximately $28,000.00 in U.S. currency, and several pieces of gold jewelry.  The funds also included a $50,000.00 check from Wife's mother, which was intended to be used as a down payment for a marital home.

Two days after the wedding, Husband returned to Pittsburgh, Pennsylvania, while Wife remained in New York to complete her undergraduate degree.  Husband and Wife visited one another occasionally

until February 2015. During the approximately 6 months that they were married, Husband and Wife spent less than 30 days together.

Husband filed a Complaint in Divorce on January 14, 2016, asserting that the marriage was irretrievably broken. On March 18, 2016, Wife filed a Petition Raising Claims, seeking equitable distribution, alimony, and counsel fees and expenses. Following a procedural history that is not relevant to the instant appeal, the trial court conducted a hearing, and determined the date of separation to be February 17, 2015.

On August 31, 2017, Husband filed an Affidavit pursuant to Section 3301(d) of the Divorce Code, asserting that the marriage was irretrievably broken, and that the parties had lived separate and apart for at least two years. Wife filed a Counter-Affidavit on September 8, 2017, opposing the entry of a divorce decree, and indicating her wish to pursue claims for economic relief. The trial court referred the matter to a Hearing Master, scheduled a hearing, and directed the parties to file pre-trial statements. Husband and Wife timely complied.

Following a hearing, the Master issued a Report and Recommendation. The Master first described the process by which Husband and Wife received their wedding gifts as follows:

> The parties had a traditional Chinese wedding at a restaurant in New York City's Chinatown. Gifts (usually money contained in a traditional red envelope) [were] brought by the 200 guests and were collected at the door by Husband's uncle.[FN] Members of the family, first Husband's and then Wife's, [were] called individually to present their gifts directly to the bride and groom. These gifts

may include cash, checks, [RMBs] [] or jewelry. A member of [Husband's] family collected the gifts given by [Husband's] family[,] and a member of Wife's wedding party collected the gifts given by Wife's family. There [was] a Master of Ceremonies who call[ed] each of the family members to come up[,] and then announce[d] the gifts as they [were] presented. A video showing this gift[-]giving ceremony was provided at the hearing[,] and a translation of the Chinese [testimony] was read into the record. … The Master of Ceremonies announced that the $100,000 check given to the parties by Wife's [m]other was in American dollars. Husband's uncle paid for the Master of Ceremonies and for the videographer.

---

[FN] When all of the guests [had] arrived, the envelopes [were] opened and the gifts [were] detailed and recorded in a red book. … The total amount recorded was $29,655. A portion of this money [was] applied to the costs of the ceremony, banquet, *etc.*[,] and the remainder [was] … gifted to [Husband and Wife]. $20,300 was paid to the restaurant, $1[,]100 to a wedding center, $660 to a bakery, leaving $7,595 for distribution to [Husband and Wife].

---

Master's Report and Recommendation, 4/6/18, at 2-3 (footnote in original).

The Master also outlined the following evidence and testimony:

- In total, Husband and Wife received checks totaling $135,500.00 in U.S. currency, and RMBs worth approximately $28,217.05; Wife received 16 gold bracelets, 5 gold rings and 12 gold necklaces; Husband received 1 necklace. *Id.* at 3.

- In addition to the check Wife's mother gave to Husband and Wife, Wife's Mother gave a $50,000.00 check to Husband's father, to be used as a down payment on a marital home. No house was ever purchased for Husband and Wife, but the money was never returned to Wife's mother. *Id.*

- Wife's brother later drove her to Pittsburgh to pick up her belongings (including cash she had left during a previous visit), but Husband would not allow them to enter his apartment. When Wife called the police, Husband stated that he had thrown away Wife's things, and did not have her money. *Id.* at 4, 7.

- Wife testified that Husband had been unwilling to make plans for her to move to Pittsburgh, even after she had graduated. *Id.* at 6.

- After Husband filed the Complaint in Divorce, his ownership in his beer distributorship was transferred to his aunt; however, Husband continued to manage the store, complete the ordering, and pay the bills. *Id.*

Additionally, the Master made the following conclusions and credibility findings:

- The Master discredited Husband's assertions that the checks presented during the wedding were strictly "ceremonial." *Id.* at 3 n.3.

- Although Wife's mother gave Husband's father a $50,000 check to use as a down payment for a marital home, no home was purchased. The Master believed that Husband's father and mother used the money to purchase their own home, just a few months after the wedding, or for their own personal use. *Id.* at 3-4, 8.

- The refusal of Husband's father to appear at the hearing indicates the truth of the allegations. *Id.* at 5.

- Husband threw away Wife's belongings, but did not throw away the cash. *Id.* at 4, 7.

- "The Master found Wife credible and Husband evasive…." *Id.* at 9.

Based upon the foregoing, the Master recommended that (1) Husband owes Wife $6,506.00, to be paid in 12 installments, for her personal items; (2) Husband will be responsible for any legal fees Wife incurs incident to collecting these payments; (3) Husband must pay Wife $14,208.30 in U.S. currency, in 28 installments, for his father's use of the couple's Chinese currency; (4) Wife's gold jewelry must be returned to her, or Husband must pay Wife $750; and (5) Husband owes Wife $50,000, in the form of a Judgment Note in alimony,[1] for the remaining money the couple received as wedding gifts, to be paid in installments of $5,000 per year. *See id.* at 7-9.

On April 25, 2018, Husband filed Exceptions to the Master's Report and Recommendation, asserting that the Master erred in identifying and valuing the marital property subject to distribution. The trial court conducted a

---

[1] The Master also recommended that "[a]ny money not paid in that single year or any subsequent single year … shall be added to the funds required for the next year and those funds shall accrue interest at 4.5% annually." Master's Report and Recommendation, 4/6/18, at 9.

hearing on the Exceptions. By an Order entered October 19, 2018, the trial court dismissed Husband's Exceptions, and adopted the Master's Report and Recommendation.[2]

Husband filed a Notice of his intention to seek entry of a final divorce decree on October 31, 2018, after which Wife again filed a Counter-Affidavit pursuant to Section 3301(d) of the Divorce Code, opposing entry of a divorce decree, asserting that the marriage was not irretrievably broken, and indicating her wish to pursue economic claims. The trial court entered a Divorce Decree on December 19, 2018. Husband filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.

Husband raises the following issues for our review:

I. Did the trial court err when, as part of the equitable distribution scheme, it ordered Husband to execute a judgment note for $50,000[.00] against his will and in violation of his constitutional right to due process of law?

II. Did the trial court err when, as part of the equitable distribution scheme, it ordered Husband to pay each of the cash awards of $50,000[.00], $14,108.30, $6,455.75, $6,506[.00], and $750[.00] to Wife[,] without making any finding[s] of fact, and without any proof[] that any marital property existed on the date of separation, or that Husband dissipated any marital property?

Husband's Brief at 4.

---

[2] In its Order, the trial court also dismissed the Cross-Exceptions filed by Wife. However, no Cross-Exceptions appear in the certified record, nor does the docket reflect that any were filed.

In his first claim, Husband argues that the trial court erred by ordering him to execute a $50,000.00 Judgment Note as part of the equitable distribution scheme. *Id.* at 9. Husband claims that a court may not enter judgment and award interest in a divorce proceeding, without first conducting a hearing on an alleged failure to comply with an equitable distribution order. *See id.* at 10-14. Husband also contends that judgment notes may not be entered against natural persons, and may not be used in a divorce proceeding. *See id.* at 14-20. Additionally, Husband argues that he cannot be forced to execute a judgment note against his will. *See id.* at 20-22.

The trial court deemed Husband's first issue waived, because he failed to raise it in his Exceptions. *See* Trial Court Opinion, 4/1/19, at 5. Our review reveals that Husband's Exceptions include a bald allegation that the Master erred in awarding Wife $50,000.00 (a portion of the total funds received during the wedding), and ordering Husband to execute a Judgment Note in that amount, in the nature of alimony. However, Husband failed to identify in the Exceptions *why* he believes the Master erred. In his Concise Statement, Husband raised, for the first time, his claim that the directive to execute the Judgment Note violates his constitutional right to due process. Concise Statement, 2/13/19, at 1 (unnumbered). Because Husband did not raise his due process claim in the trial court prior to appeal, we agree that Husband's first claim is waived. *See* Pa.R.A.P. 302(a) (providing that "[i]ssues not raised

in the lower court are waived and cannot be raised for the first time on appeal.").

In his second claim, Husband challenges portions of the trial court's equitable distribution scheme ordering him to pay Wife various cash awards. *See* Husband's Brief at 22-72. As to each of the contested cash awards, Husband asserts that, prior to including such awards in its equitable distribution scheme, the trial court failed to make factual findings that (1) marital property existed on the date of separation; (2) Husband was in possession of any marital property on the date of separation; and (3) Husband dissipated any marital property. *See id.*

> [O]ur standard for reviewing awards of equitable distribution are well settled. The trial court has broad discretion in fashioning such awards, and we will overturn an award only for an abuse of that discretion. To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure. Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights.

*Hayward v. Hayward*, 868 A.2d 554, 557-58 (Pa. Super. 2005) (citations omitted). Further, "it is within the province of the trial court to weigh the evidence and decide credibility[,] and this Court will not reverse those determinations so long as they are supported by the evidence." *Childress v. Bogosian*, 12 A.3d 448, 455 (Pa. Super. 2011); *see also id.* at 455-56 (explaining that "a master's report and recommendation, although only advisory, is to be given the fullest consideration, particularly on the question

- 8 -

of credibility of witnesses, because the master has the opportunity to observe and assess the behavior and demeanor of the parties." (citation omitted)).

Initially, as the trial court aptly noted in its Opinion, Husband's Concise Statement "is neither clear nor concise[,]" and "assails virtually every aspect of [the trial court's] decision[.]" Trial Court Opinion, 4/1/19, at 2. Nevertheless, in its Opinion, the trial court set forth the legal and factual basis for its decision, and addressed the sufficiency of the evidence supporting its decision as to the equitable distribution scheme. *See id.* at 7-10; *see also id.* at 6 (wherein the trial court reiterated that it adopted the Master's Report and Recommendation); Master's Report and Recommendation, 4/6/18, at 1-9 (wherein the Master summarized the relevant testimony, and set forth her relevant findings, credibility determinations, and conclusions). We agree with and adopt the trial court's Opinion regarding Husband's broad challenge to the propriety of the equitable distribution scheme. *See* Trial Court Opinion, 4/1/19, at 7-10. We specifically point out, as did the trial court, that "[t]here was a video introduced showing the gifts[;] there were contemporaneously prepared lists of the gifts which were counted by the couple[; and] there were endorsed checks…." *Id.* at 8. The trial court also specifically credited the evidence presented by Wife and her witnesses, and found Husband's testimony to be incredible. *See id.* at 8, 9. We decline to reassess the credibility of the witnesses, *see Childress*, 12 A.3d at 455, and we otherwise discern no abuse of the trial court's discretion. Therefore, Husband is not entitled to relief on this claim.

Decree affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 9/30/2019