J-S22027-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | | |
|---|---|---|---|
| S.S. | : | IN THE SUPERIOR COURT OF | |
| | : | PENNSYLVANIA | |
| Appellant | : | | |
| | : | | |
| | : | | |
| v. | : | | |
| | : | | |
| | : | | |
| L.S. | : | No. 2044 MDA 2018 | |

Appeal from the Order Entered November 28, 2018
In the Court of Common Pleas of Lancaster County Civil Division at
No(s):  CI-17-02838

BEFORE:   SHOGAN, J., DUBOW, J., and PELLEGRINI*, J.

MEMORANDUM BY DUBOW, J.:                           **FILED JUNE 13, 2019**

Appellant, S.S. ("Father") appeals from the November 28, 2018 Order which, *inter alia*, granted Appellee, L.S. ("Mother"), sole legal and physical custody of 15-year-old S.S. and 14-year-old S.A.S. (collectively, "Children"), and granted Father weekly telephone contact and up to two supervised in-person visits yearly with Children at the prison where Father is incarcerated. Upon careful review, we affirm.

The relevant factual and procedural history is as follows.  Father and Mother are Children's biological parents and the parties lived together until January 2007.  On July 18, 2013, Father entered a guilty plea to Third-Degree Murder and the court sentenced him to 15 to 30 years' incarceration.  On March 29, 2017, Father filed a *pro se* Complaint in Custody.  On September 14, 2017, after a hearing, the trial court issued an Order by agreement of the parties which, *inter alia*, granted Mother sole legal and physical custody of

_____

* Retired Senior Judge assigned to the Superior Court.

Children and granted Father weekly telephone contact and two supervised in-person visits yearly with Children at the prison where Father is incarcerated.

On December 21, 2017, Father filed a *pro se* Petition for Contempt. After a conference and numerous hearings, on November 28, 2018, the trial court issued an Order that denied Father's Petition for Contempt, granted Mother sole legal and physical custody of Children, granted Father weekly telephone contact, and ordered that Children "may elect" to have up to two supervised in-person visits with Father in prison. Order, 11/28/18, ¶ II(D). The Order also stated that Father's paramour, T.H., shall not be present at Children's visits with Father. ***See id.*** at ¶ II(E).

Father filed a timely *pro se* Notice of Appeal. Both Father and the trial court complied with Pa.R.A.P. 1925.[1]

Father raises the following issues on appeal:

1) The trial court during the hearing on November 6[,] 2018[,] agreed to [Father's] request to put in the Order that it would read that [Father] would be permitted "contact visitation" with [Children] at SCI Laurel Highlands. This was "not" written in the Order as stated it would be.

2) The stipulation regarding [T.H.] should be removed and was only agreed upon for "initial" visit in August 2018 [] and has no reason to be there other than [Mother] does not like her personally.

---

[1] Father failed to file a Statement of Errors Complained of on Appeal wih his Notice of Appeal pursuant to Pa.R.A.P. 1925(a)(2)(i). On January 16, 2019, this Court issued an Order directing Father to file a Statement of Errors by January 28, 2019 or face waiver and/or dismissal. ***See*** Order, 1/16/19. On January 25, 2019, Father filed a Statement of Errors in the trial court. ***See*** Trial Court Docket.

3) Issue that [Father] did not get the same respect and [courtesy] in this case in regards to interviewing the children and/or being permitted to listen in to the trial Judge while interview was being conducted.

Father's Brief at 2 (some capitalization omitted).

The Child Custody Act, 23 Pa.C.S. §§ 5321-5340, governs all custody proceedings commenced after January 24, 2011. **E.D. v. M.P.**, 33 A.3d 73, 77 (Pa. Super. 2011). The Custody Act requires a trial court to consider all of the Section 5328(a) best interests factors when "ordering any form of custody[.]" 23 Pa.C.S. § 5328(a). Moreover, when one parent is incarcerated, a trial court should consider additional factors unique to prison cases. **See S.T. v. R.W.**, 192 A.3d 1155, 1167 (Pa. Super. 2018) (acknowledging that the factors delineated in **Etter v. Rose**, 684 A.2d 1092, 1093 (Pa. Super. 1996), are now assimilated into the Section 5328(a) analysis under subsection 16, "Any other relevant factors.").[2]

A trial court must "delineate the reasons for its decision when making an award of custody either on the record or in a written opinion." **S.W.D. v. S.A.R.**, 96 A.3d 396, 401 (Pa. Super. 2014). **See also** 23 Pa.C.S. § 5323(a) and (d). However, "there is no required amount of detail for the trial court's

---

[2] These factors include: (1) age of the child; (2) distance and hardship to the child in traveling to the visitation site; (3) the type of supervision at the visit; (4) identification of the person(s) transporting the child and by what means; (5) the effect on the child both physically and emotionally; (6) whether the parent has and does exhibit a genuine interest in the child; (7) whether reasonable contacts were maintained in the past, and (8) the nature of the criminal conduct that culminated in the parent's incarceration. **S.T.**, 192 A.3d at 1167.

explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." **M.J.M. v. M.L.G.**, 63 A.3d 331, 336 (Pa. Super. 2013).

"The paramount concern in child custody cases is the best interests of the child." **C.G. v. J.H.**, 193 A.3d 891, 909 (Pa. 2018) (citation omitted). "The best-interests standard, decided on a case-by-case basis, considers all factors which legitimately have an effect upon the child's physical, intellectual, moral and spiritual well-being." **M.J.N. v. J.K.**, 169 A.3d 108, 112 (Pa. Super. 2017) (citations omitted).

This Court reviews a custody determination for an abuse of discretion. **In re K.D.**, 144 A.3d 145, 151 (Pa. Super. 2016). We will not find an abuse of discretion "merely because a reviewing court would have reached a different conclusion." **Id.** (citation omitted). Rather, "[a]ppellate courts will find a trial court abuses its discretion if, in reaching a conclusion, it overrides or misapplies the law, or the record shows that the trial court's judgment was either manifestly unreasonable or the product of partiality, prejudice, bias or ill will." **Id.** (citation omitted).

Further, when this Court reviews a trial court's "best interests" analysis in custody matters, our scope of review is broad, but we are "bound by findings supported in the record, and may reject conclusions drawn by the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court." **Saintz v. Rinker**, 902 A.2d 509,

512 (Pa. Super. 2006) (quotation and citation omitted). "On issues of credibility and weight of the evidence, we defer to the findings of the trial judge who has had the opportunity to observe the proceedings and demeanor of the witnesses." *K.T. v. L.S.*, 118 A.3d 1136, 1159 (Pa. Super. 2015) (citation omitted). Importantly, "[a]lthough the discretion remains exclusively with the trial court, a child's well-reasoned preference, based on her age and judgment, could carry more weight in an incarceration case than it might otherwise would have." *S.T.*, 192 A.3d at 1168. We can only interfere where the "custody order is manifestly unreasonable as shown by the evidence of record." *Saintz*, 902 A.2d at 512 (citation omitted).

In Father's first issue, he avers that the trial court abused its discretion when it failed to specify in its November 28, 2018 Order that Children should have a "contact visit" with him, as opposed to a visit with a glass barrier, when they visit him in prison. Father's Brief at 6 (unpaginated). He argues that the trial court judge "stated he would include this wording in the [n]ew Order." *Id.* Our review of the record belies this claim.

At the November 6, 2018 custody hearing, Father requested to have the Order specify that Children's visits at the prison be "contact visits." N.T. Custody Hearing, 11/6/18, at 29. In his Brief, Father mischaracterizes the trial court's response. Initially, the trial court did consider including language that allowed a "contact visit" if Children so desired, stating: "Well, then how about I put in the order that if desired, it shall be a contact visit." *Id.* at 30.

However, after hearing testimony from Children in chambers, the trial court decided that it would be in Children's best interest for them to pick the type of visitation.

> The trial court opined:
>
> The record is clear that [Children] have had their share of struggles with the difficult circumstances surrounding [Father]'s incarceration.
>
> The trial court had the opportunity to interview both children in chambers. [N.T. Custody Hearing at 41-75.] The trial court accorded great weight to the teenage [C]hildren's preference as to how and when they visit their incarcerated father. [Children] were polite, articulate, and set forth a well-reasoned preference to visit [Father] on their own terms as their relationship with him evolves. [Father] desired for the trial court to enter mandatory language, *i.e.*, that [Children] must visit him at certain intervals and those visits must be in-person, contact visits. The trial court does not want to mandate that [Children] must have a specific kind of visit with [Father], but that they have the flexibility to pick the visitation type (*i.e.* contact or no-contact) as they become more comfortable visiting with their incarcerated [F]ather. The trial court made this clear to the parties at the November 6, 2018 hearing.

Trial Ct. Op., filed 1/15/19, at 5. The trial court highlights two different parts of the transcript where it conveyed this to the parties. ***See id.*** First, the trial court stated on the record:

> . . . I think one of the things that we have to be careful of is not putting undue pressure on [Children] to do things they don't want to do, that it then becomes a negative experience. We want it to be a positive experience.

***Id.*** citing N.T. Custody Hearing at 31. Then, after hearing testimony from Children in chambers, the trial court stated on the record:

But again, I want it to be the type of order that doesn't force [Children] to do things against their will, but encourages them to do things and to expand the kinds of things they do and experience with you as they move forward, because I do believe that's in their best interest.

*Id.* citing N.T. Custody Hearing at 38-39.

Our review of the record reveals that the trial court did not abuse its discretion when it declined to include language in the Order that compelled Children to have a "contact visit" with Father in prison. The trial court found Children's testimony that they prefer to visit Father on their own terms to be credible, and concluded that a flexible visitation Order was in Children's best interest. The trial court engaged in an analysis of the Section 5328(a) factors, including the factors unique to prison cases, when making its custody determinations and the record supports the trial court's findings. We will not reweigh the evidence or interfere with the trial court's credibility determinations. Accordingly, we find no abuse of discretion.

In his second issue, Father asserts that the trial court abused its discretion when it ordered that his paramour, T.H., should not be present during Children's visits with Father. Father's Brief at 7 (unpaginated). Essentially, Father argues that that there is no evidence in the record to support this prohibition. *Id.* at 7-8. We disagree.

The trial court included this prohibition against T.H. attending visits based on testimony from Mother, which the trial court deemed to be credible. The trial court opined:

[Mother] stated that she was not comfortable with [T.H.]'s presence at the visits, that she believes that the son does not want

her there, and that [T.H.] has a proclivity for undermining [Mother] as a mother. The trial court found [Mother]'s statements to be credible, her rationale to be reasonable, and the trial court simply endeavors for [Father] and [Children] to first reestablish some semblance of a parent/child relationship unfettered by the unnecessary turmoil that comes with introducing [Father]'s girlfriend into the situation.

Trial Ct. Op. at 5-6. As stated above, we decline to reweigh the evidence or interfere with the trial court's credibility determinations. As the record supports the trial court's findings, we find no abuse of discretion.

In his final issue, Father contends that the trial court erred and violated his due process rights when the court did not permit him to interview Children, or to be present during the trial court's interview of Children. Father's Brief at 8 (unpaginated). Father argues that he has a constitutional right to cross-examine witnesses, face accusers, and present a proper defense. *Id.* at 9 (unpaginated).[3] We find that Father has waived this issue.

In presenting this argument, Father does not cite any legal authority, provide citation to the record, or engage in any constitutional analysis to support his argument pursuant to Pa.R.A.P. 2119. Because this argument is underdeveloped, we are unable to conduct meaningful review. While this Court is willing to liberally construe materials filed by a *pro se* appellant, "*pro se* status confers no special benefit upon the appellant." **Commonwealth v. Adams**, 882 A.2d 496, 498 (Pa. Super. 2005). Therefore, Father's *pro se* status does not relieve him of his duty to properly raise and develop

---

[3] Some of the pages in Father's Brief are paginated and some are unpaginated. This page is labeled "10" but is actually page 9.

his claims on appeal. ***Smathers v. Smathers***, 670 A.2d 1159, 1160 (Pa. Super. 1996). Accordingly, this issue is waived. ***See*** Pa.R.A.P. 2119 (describing briefing requirements); ***Hayward v. Hayward***, 868 A.2d 554, 558 (Pa. Super. 2005) (finding that appellant waived issue when he failed to cite pertinent authority, reference the record, and engage in a specific discussion of error).

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 06/13/2019