J-S36031-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| EDMONDO CRIMI | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| LAURA CRIMI | : | No. 1349 EDA 2021 |

Appeal from the Order Entered June 15, 2021
In the Court of Common Pleas of Bucks County Civil Division at No(s):
A06-09-60800-D/Q/Y/R

BEFORE:   LAZARUS, J., KING, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                    **FILED MAY 25, 2022**

Edmondo Crimi (Appellant) appeals from the order of the Court of Common Pleas of Bucks County entering a divorce decree, settling equitable distribution matters between the parties, and issuing a schedule of "equitable reimbursement alimony" payments that Mr. Crimi would pay to his former spouse, Laura Crimi (Appellee).  On appeal, he challenges the lower court's calculation of the marital value of the inventory and debts of the parties' antiques business that was subject to equitable distribution, the award of the scheduled installment payments to Appellee, and various evidentiary rulings.  Upon review, we vacate the current award of scheduled payments, remand for further proceedings for separate orders addressing the equitable division

_____

[*] Retired Senior Judge assigned to the Superior Court.

of the parties' marital assets and the payment of former alimony arrears, and

affirm in all other respects.

The lower court has summarized the factual and procedural history as

follows:

> Appellant, Edmondo Crimi (hereinafter "Appellant") and Appellee, Laura Crimi (hereinafter "Appellee") were married on November 26, 1992 and separated for the final time in October 2013. This matter was commenced when Appellant filed a Complaint in Divorce on January 17, 2017.[1] The parties appeared in Court on numerous occasions, and an Order approving Section 3301(d) Grounds for Divorce was entered on October 5, 2017.
>
> > [1] The parties originally separated in 2009 and a Divorce Complaint was filed on March 17, 2009, litigation ensured, and the parties then reconciled in approximately 2010. The original Divorce Complaint was withdrawn, via stipulation, on August 11, 2010.
>
> The parties were married for twenty-one (21) years, having been married on November 26, 1992 and separating for the final time in October 2013. This was the second marriage for Appellant and first marriage for Appellee. The parties have two adult children born of the marriage. Appellant is 61 years old and in good health. Appellee is 56 years old and reports she is in "okay" health.
>
> Both parties worked in the family antique business during the marriage. Appellant was self-employed at The Best of France Antiques, Inc. (hereinafter "Best of France"), which has now become Edmondo Crimi, LLC as of approximately April 2019,[2] and has been involved in the buying and selling of antiques since the age of 17. He was assigned an earning capacity of $60,000 per year by [the Honorable James M.] McMaster in the companion support matter. He has health benefits for himself, Appellee, and the younger of the two children. Appellee is self-employed at Stone House Antiques, however, she stated she is closing the business and liquidating the inventory. She also teaches English on-line to Chinese students, earning $40 to $60 per week, and was assigned an earning capacity of $20,000 per year, by Judge McMaster in the companion support matter.

2 According to the testimony, Best of France became "inactive" around April 2019 when Appellant created a new entity, Edmondo Crimi, LLC. See January 8, 2021, N.T. p. 48. Appellant simply transferred the assets and inventory, from Best of France to Edmondo Crimi, LLC. Id. at p. 41.

On December 16, 2019, a Final Order in Support (hereinafter "Support Order") was entered in the form of alimony pendente lite (hereinafter "APL"). The Support Order was effective as of June 13, 2017 and was set at $989.78 per month in APL. Both parties filed petitions to modify the Support Order (Appellant seeking a decrease and Appellee seeking an increase), which were heard and denied by Judge McMaster on December 21, 2020. At that time, Judge McMaster also ordered that Appellant was in contempt of the Support Order, and he was ordered to pay $750.00 to Domestic Relations on or before December 24, 2020. Judge McMaster also ordered the APL shall terminate no later than June 30, 2021. Between March 2016 and December 31, 2020, there were at least thirteen contempt proceedings and two bench warrants issued against Appellant for his failure to pay the Support Order. As of June 1, 2021, there were outstanding arrears owed to Appellee of $21,779.99.

On April 14, 2014, at a Hearing before [the Honorable Susan Devlin] Scott, the parties reached an agreement that each would perform an inventory and take pictures of the merchandise/inventory (to have "something frozen in amber" for the Court in Equitable Distribution). See April 14, 2014 N.T. p. 16. Appellee testified that she went to the business approximately one month later, (May 2014) to take the photos of the merchandise, which she ultimately admitted into evidence in these proceedings, along with her list of the inventory at that time. See Exhibit Jt-10; W-7.

On June 7, 2017, after another Hearing before Judge Scott, Appellant was ordered to provide Appellee with pictures of the inventory within "two weeks of today's date," and Appellee was ordered to provide an accounting of items she removed from the business to Appellant. The Hearing was then continued and heard on October 12, 2017. Since Appellant still had not produced [an] inventory or pictures of inventory at the time of the October 12, 2017 Hearing, he was ordered yet again by Judge Scott to take pictures of all inventory and consignment items within twenty-five

(25) days, and to produce that to Appellee by November 30, 2017. He was also ordered to provide a written report and photos to Appellee monthly thereafter regarding the business inventory, as was Appellee to Appellant. See October 12, 2017 N.T.

The parties, and their counsel, participated in an equitable distribution conference before the Master on August 24, 2020. The parties then appeared in Court for a de novo hearing over the course of three days, January 8, 2021, March 12, 2021, and May 4, 2021. On June 15, 2021, a Divorce Decree and Order was entered. Per the June 15, 2021 Order, all right, title, and interest in the marital business, The Best of France, and any and all successor businesses, was awarded to Appellant, free of any claim to Appellee, once he made all equitable reimbursement payments to Appellee. Per the Order, Appellant is solely responsible for all debt associated with the Best of France, and each party is solely responsible for any and all debts incurred in their respective names during the marriage. Appellant was ordered to pay Appellee a total sum of $836,394.00, in the form of six (6) equal $139,399.00 monthly installments of non-modifiable Equitable Reimbursement Alimony, effective with the first payment on July 1, 2021.

On June 22, 2021, Appellant filed a Motion to Reconsider and Vacate the Decree and Order Entered on June 15, 2021. Appellant then filed a Notice of Appeal on June 25, 2021, and thereafter filed an Amended Appeal on June 30, 2021.[3] An Order was entered on July 2, 2021, directing Appellant to file a concise Statement of Errors Complained of on Appeal within twenty-one (21) days of the date of the Order. Appellant's Concise Statement of Errors Complained of on Appeal Pursuant to Pa.R.A.P. 1925(b) was timely filed on July 9, 2021.

> [3] An Application for Supersedeas Pending Appeal was filed by Appellant on July 1, 2021 and denied by this Court on July 8, 2021.

Trial Court Opinion, 8/20/21, 1-4; R.R. 1416-19. Appellant also filed a petition for supersedeas pursuant to Pa.R.A.P. 1732(b) that this Court denied on October 7, 2021.

- 4 -

Appellant presents the following issues for our review:

1.      Did the trial court err and/or abuse its discretion in calculating the marital value of the business for equitable distribution purposes by failing to properly consider the marital debt obligations of the business?

2.      Did the trial court err and/or abuse its discretion by improperly considering only the assessed value of the business inventory assets and failing to consider and deduct the expenses and costs incident to acquiring the inventory?

3.      Did the trial court err and/or abuse its discretion in awarding "equitable reimbursement alimony" in the amount of $139,399 per month and payable through the Domestic Relations Section knowing that Appellant lacked the assets or income to pay and in not ordering a supersedeas of the Decree & Order pending appeal?

4.      Did the trial court err[ ] and/or abuse[ ] its discretion by improperly disregarding Appellant's evidence, testimony and witnesses based on pure conjecture regarding "facts" not in evidence, and factually erroneous interpretations of the evidence and prior rulings in the case?

Appellant's Brief at 5-6 (suggested answers omitted).

As a preliminary matter, we observe the different standards of review that apply to the issues raised. Our review with respect to the challenge of a trial court's equitable distribution scheme is limited and we will not reverse unless we find an abuse of discretion or error law. *Cuth v. Cuth*, 263 A.3d 1186, 1190 (Pa. Super. 2021). "A trial court has broad discretion when fashioning an award of equitable distribution." *Goodwin v. Goodwin*, 244 A.3d 453, 458 (Pa. Super. 2020). "An abuse of discretion is not found lightly, but only upon a showing of clear and convincing evidence." *McCoy v. McCoy*,

888 A.2d 906, 908 (Pa. Super. 2005) (citation omitted). "To assess whether the trial court abused its discretion, we must determine whether the trial court misapplied the law or failed to follow proper legal procedure." *Hayward v. Hayward*, 868 A.2d 554, 558 (Pa. Super. 2005). "Further, we measure the circumstances of the case against the objective of effectuating economic justice between the parties and achieving a just determination of their property rights." *Id.* In determining the propriety of an equitable distribution award, we consider the distribution scheme as a whole. *Goodwin*, 244 A.3d at 458.

A challenge to an award of alimony is governed by an abuse of discretion standard of review:

> Our standard of review regarding questions pertaining to the award of alimony is whether the trial court abused its discretion. We previously have explained that the purpose of alimony is not to reward one party and to punish the other, but rather to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met. Alimony is based upon reasonable needs in accordance with the lifestyle and standard of living established by the parties during the marriage, as well as the payor's ability to pay. Moreover, alimony following a divorce is a secondary remedy and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.

*Conner v. Conner*, 217 A.3d 301, 315-16 (Pa. Super. 2019) (citation omitted).

Appellant's challenge to evidentiary rulings of the trial court is also reviewed under an abuse of discretion standard:

[q]uestions regarding the admission of evidence are left to the sound discretion of the trial court, and we, as an appellate court, will not disturb the trial court's rulings regarding the admissibility of evidence absent an abuse of that discretion. An abuse of discretion is not merely an error of judgment; rather, discretion is abused when the law is overridden or misapplied, or the judgment exercised is manifestly unreasonable, or the result of partiality, prejudice, bias, or ill-will, as shown by the evidence or the record ….

*Commonwealth v. Windslowe*, 158 A.3d 698, 712-13 (Pa. Super. 2017) (citation omitted). We have stated that when the issue concerns the "proper interpretation" of the Pennsylvania Rules of Evidence, "the question is a legal one, which means our standard of review is *de novo*, and our scope of review is plenary." *Commonwealth v. Huggins*, 68 A.3d 962, 966 (Pa. Super. 2013).

## I.

### Value of the Marital Property and Business Debts

In his first issue, Appellant challenges the trial court's valuation of the parties' antiques business ("Best of France") that was subject to equitable distribution. Appellant's Brief, at 17-31. He asserts that the court "failed to properly account for business loans" in calculating the value of the marital property and improperly disregarded "all of the considerable and unrefuted evidence of the business debt." *Id.* at 17. He points to the analysis of the trial court in its post-decree and post-Rule 1925 statement opinions as proof of error and alleges that the court was wrong in both opinions because, under his theory, "the marital estate [wa]s a debt estate and there [wa]s nothing

but debt to divide" between the parties. *Id.* at 17-18. Appellant alleges that "some $3,329,000 worth of business debt," including a single judgment of $1,452,500 (referred to by Appellant as the "Shapiro debt"), should have offset the court's valuation of the business. *Id.* at 18-21.

Appellant asserts the alleged debts were supported below by his submission of tax returns for Best of France for the years 2009-2019, and testimony from himself, a business accountant, and creditors. Appellant's Brief, at 19-20. He claims that the trial court disregarded the Shapiro debt because it was not "on the taxes or known by the business accountant." *Id.* at 20. He blames that on the fact that he disputed that particular debt as the reason for why it was not included in the business's tax returns. *Id.* at 21. He characterizes evidence supporting the Shapiro debt as "uncontroverted" and faults the trial court for failing to factor in the debts of the business when calculating its overall valuation for equitable distribution purposes. *Id.* at 20-23.

Appellant also claims that the trial court erred in considering the loans that made up the debts of the business as illegitimate because there were no payments made on them. Appellant's Brief, at 25. He asserts that his documentation below indicated that "some payments were made on many of the loans" and "[t]here was nothing in evidence to refute the sworn testimony of the creditors nor the written loan documents." *Id.* at 25-26. He also claims that the court incorrectly stated that the loans were not expected to be repaid, citing to testimony from his creditor witnesses. *Id.* at 26.

Moreover, Appellant asserts that the trial court erred by not treating the business debts as marital debts for equitable distribution purposes because Appellee had "not signed off on" them. Appellant's Brief, at 27-28. He notes that Appellee was a "10% owner" of the business "after the marriage," and claims that, while he admits that Appellee was "not involved in the day-to-day business decisions and was self-admittedly 'clueless,'" she nevertheless benefitted by the business loans. *Id.* at 28-29. He additionally asserts that awarding inventory items to Appellee in the event of his default, where the inventory was used as collateral to secure the debts, "impermissibly interferes with the rights of [the] judgment creditors" and fails "to give full faith and credit" to the judgment filed in New York in connection with the Shapiro debt. *Id.* at 30. We decline to find an abuse of discretion because his claim essentially amounts to an invitation for this Court to ignore the findings of fact of the lower court and to substitute our own judgment based on a cold record.

"Upon the request of either party in an action for divorce or annulment, the court shall equitably divide, distribute or assign, in kind or otherwise, the marital property between the parties … in such percentages and in such manner as the court deems just after considering all relevant factors." 23 Pa.C.S. § 3502(a).

"The Divorce Code does not specify a particular method of valuing assets." *Zabrosky v. Smithbower-Zabrosky*, --- A.3d ----, 2022 WL 1040007, *9 (Pa. Super., filed Apr. 7, 2022). The trial court must exercise discretion and rely on, among other documentation, the estimates submitted

- 9 -

by both parties. **Smith v. Smith**, 904 A.2d 15, 21-22 (Pa. Super. 2006) (citation omitted).

Here, as the trial court pointed out in its post-decree opinion, the parties had diametrically opposed views of the value of their antiques business: "Husband asserts that the business has a negative value of $1,000,000 or more, and Wife disputes this value. Wife asserts that the value of the business is a positive $2,100,000 without any debt." Decision, Liller, J., 6/15/21, 5; R.R. 956.

In its post-decree opinion, the court viewed the alleged debts to be part of a scheme to improperly manipulate the overall value of the business to deprive Appellee of a fair share of their marital estate:

> It is abundantly clear to the undersigned that Husband made very deliberate, and repeated efforts in an attempt to deprive Wife of her share of the marital estate. Husband has been playing a shell game with the finances for years, beginning with the "loans" from Chance Worthington to Husband in 2012, which Wife said prompted the second separation from Husband. Wife said she was unaware of these "loans" Husband took out, and she never consented to them. It should also be noted that Husband took out these "loans" with Mr. Worthington on behalf of himself and Best of France Antiques. He had no authority to unilaterally take out loans, nor enter into collateral agreements securing the inventory of Best of France for his unilateral "loans," without the consent of Wife as a shareholder of the business. The Court, therefore, has serious reservations about the legality and legitimacy of these so-called loans from Chance Worthington to Husband and Best of France Antiques. The undersigned also finds it highly suspicious, that on October 15, 2017, days after the October 12, 2017 Hearing before Judge Scott, and days before the Hearing in the Den of Antiquity/Elliott Shapiro vs. Best of France and Edmondo Crimi matter, Husband, on behalf of Best of France Antiques, Inc. entered into an agreement with his friend Chance Worthington, giving Mr. Worthington a "security interest" in all

"machinery, equipment, inventory and accounts; all goods consigned by served party," to secure the debt from March 1, 2014. Again, Husband entered into this "Agreement" on behalf of Best of France, Inc. without the consent or knowledge of Wife, a shareholder of the business.

As for the other "loans" Husband claimed he is indebted to, the undersigned also highly doubts the validity of these debts, and they shall not be considered by the Court in the determination of Equitable Distribution. Any of the loans that were taken out pre-separation, and therefore, during the marriage, are not considered true debts as Husband has not made any payments to the debts in years, if at all, and the majority of these so-called loans were not documented in any way. Some of the alleged loan holders even went so far as to loan Husband additional money, after he never paid back the first "loan" to that creditor. This fact combined with the additional fact that not one of these alleged creditors has pursued any legal action against Husband for the non-repayment of these so-called loans, causes the undersigned to doubt the validity of any of the loans Husband asserted.

Decision, Liller, J., 6/15/21, 10-11 (citations and footnotes omitted); R.R. 961-962.

As for the former real estate owned by the parties, that was later foreclosed upon, the court did not factor the loss of that property because the foreclosure occurred due to Appellant's failure to pay the loan on the property and real estate taxes for it for years, following the separation of the parties. Decision, Liller, J., 6/15/21, 12; R.R. 963. The court noted that Appellant had never provided any explanation why he did not make the monthly loan payments after the parties' separation, at the same time that the court appreciated that he had a monthly bank account balance that would have permitted him to cover the monthly loan amounts. Decision, Liller, J., 6/15/21, 12-13; R.R. 963-964. As with the business loans alleged by

Appellant, the court implied that the non-payment of the real estate loans was part of a scheme to devalue the marital assets for equitable distribution purposes:

> The Court also found it telling that since Husband's friend, Mr. Worthington, purchased the Chestnut Grove Property from Wells Fargo (after the foreclosure) that Husband has been consistently making his $6,000.00 monthly rent payments to Mr. Worthington without fail.[9] This, in addition to the review of Husband's bank statements, clearly indicates to the undersigned that Husband had the financial ability to make the monthly Wells Fargo loan payments, but he willfully failed to do so. By doing such, Husband obviously dissipated a marital asset.
>
> > 9 Wells Fargo purchased the Chestnut Grove property at the sheriff's sale on June 30, 2017. Husband must have falsely told Wells Fargo that he was a "tenant" on the property, as he received a letter dated July 20, 2017 from Wells Fargo referring to him as a "tenant" of the property (versus the former owner) and requested he forward a copy of his current lease. Then, on December 18, 2017, his friend, Mr. Worthington purchased the property for $700,000.00. The Court strongly believes that this transaction was done with ill intent on the part of the Husband in order to prevent Wife from getting a share of the value of the property in Equitable Distribution.

Decision, Liller, J., 6/15/21, 13 & n.9; R.R. 964.

In its Rule 1925(a) opinion, the court explains that it assigned the business debts in question to Appellant as a matter of discretion because it found "the credibility of [his] testimony and assertions of the business 'debt' to be severely lacking." Trial Court Opinion, 8/20/21, 6; R.R. 1421. Again, the court reiterated that it found that it was "abundantly clear that Appellant made deliberate and repeated efforts to deprive Appellee of her share of the

marital estate … via his dissipation of the[ ] marital assets." *Id.*; R.R. 1421. The court repeated its former assertion that it found that Appellant entered into a "highly suspicious" security agreement for some of the alleged debt with Mr. Worthington and it found that Appellant failed to produce documentation showing that the Shapiro debt was incurred during the marriage and thus attributable to Appellee in part. *Id.* at 7-9; R.R. 1422-24. With respect to the Shapiro debt, the court noted that Appellant disputed at least part of that alleged debt because Appellant did not receive all the merchandise supposedly tied to that debt agreement, Appellant's long-term accountant was not aware of the judgment for that debt "until just recently," and that debt was not referenced in Appellant's business or personal tax returns. *Id.* at 8-9; R.R. 1423-24.

The court declined to consider the Shapiro debt as a marital debt because Appellant did not involve Appellee in the process for acquiring the debt or the inventory associated with it, or litigating the supposed enforcement of the debt:

> Not only did Appellant deprive Appellee the opportunity to participate in the litigation that led to the Shapiro judgment, but this failure also potentially deprived Appellee an opportunity to protect her share of ownership of the inventory for Equitable Distribution. Based on the equities, this Court assigned this debt solely to Appellant, even if it appears, by Appellant's own assertions that it is not a legitimate debt. Additionally, by Appellant's testimony, it seems that the Shapiro judgment cannot be executed upon now that he transferred all of the assets and inventory of Best of France to a newly created corporation, and allowed the Best of France real property to go into foreclosure. The Court also found that Appellant did not provide credible

- 13 -

evidence to establish this debt was incurred during the marriage, therefore, the debt was assigned to Appellant only.

Trial Court Opinion, 8/20/21, 10; R.R. 1425. As for other various debts that were alleged to have been incurred during the marriage, the court assigned them to Appellant because "he produced no documentation to establish the receipt of the supposed money nor how the money was used" and "Appellee testified that she was unaware that they existed, and never consented to them." *Id.* (record citation omitted); R.R. 1425.

The assertions made in this initial claim are unavailing for Appellant because he essentially challenges credibility determinations made by the trial court as to the alleged debt and controlling precedent allows that the lower court was permitted to refuse an equitable distribution of the debts based on the Appellee's complete non-involvement or awareness of the debts.

As for the credibility determinations of the trial court, we defer to the findings of the court below in the absence of grounds for impeachment of the court's findings that would demonstrate an abuse of discretion:

> [U]nless the transcript reveals a ground upon which the master's finding of credibility can be impeached, we give his conclusion upon that factor, based upon his observance of appearance and demeanor, the fullest consideration, especially when his report presents a searching analysis of the testimony and indicates that he has given to all the testimony thoughtful deliberation commensurate with the charge.

*Smith v. Smith*, 43 A.2d 371, 585 (Pa. Super. 1945); *see also Habjan v. Habjan*, 73 A.3d 630, 644 (Pa. Super. 2013) ("[T]his Court defers to the

- 14 -

credibility determinations of the trial court with regard to the witnesses who appeared before it, as that court has had the opportunity to observe their demeanor.") (citation omitted).

Here, our review of the record reveals that the trial court's findings are supported by the testimony and the evidence. The testimony presented by Appellant showed only nominal repayments on some of the loans, no payments made on other loans, and the continued lending of funds by some parties who were not repaid anything or anything material toward the principal of their earlier loans. Because we do not make credibility assessments, we will not disturb the trial court's decision as to the lack of apportionment of the supposed debt obligations that the record failed to show any involvement of Appellee in the creation, service, or litigation of the debts in question. It follows that the court did not believe that Appellant was forthright in the supposed creation of the debts and was not diligent in securing the necessary information to support his claims regarding the legitimacy of the alleged debts. We will not disturb the court's conclusions to that affect merely because Appellant would have wished that the court would have found him and his witnesses to be more credible witnesses in those respects.[1] *See Litmans v.*

---

[1] This Court also notes that it cannot understand Appellant's brief argument about Appellee's supposed enjoyment of the proceeds of the supposed loans where the majority of the loans appear to have been created after the separation of the parties or were not documented to have been created prior to their separation. Appellee correctly points out, "[a]fter separation, it was Husband, not Wife who was enjoying the fruits of the business." Appellee's Brief, at 6.

*Litmans*, 673 A.2d 382, 387 (Pa. Super. 1996) ("In determining the value of marital property, the court is free to accept all, part or none of the testimony as to the true and correct value of the property.").

The court was also free to base its refusal to assign any of the alleged debts in part to Appellee on its credibility ruling. "Between divorcing parties, debts which accrue to them jointly prior to separation are marital debts." *Litmans*, 673 A.2d at 691; *see, e.g., Duff v. Duff*, 507 A.2d 371, 373 (Pa. 1986) (tax assessment liability accruing to parties from sale of stock prior to separation was joint liability to be included in computation of marital estate). At the same time, "[t]he trial court has discretion to deal with each asset *or debt* discretely rather than applying a single percentage split to every part of the marital estate." *Snyder v. Snyder*, --- A.3d ----, 2022 WL 1161756, *12 (Pa. Super., filed Apr. 20, 2022) (emphasis added). "Just 'because a debt is characterized as marital[, this delineation] is not necessarily determinative of which party is liable for its satisfaction.'" *Biese v. Biese*, 979 A.2d 892, 896 (Pa. Super. 2009) (citation omitted); *see, e.g., Hicks v. Kubit*, 758 A.2d 202, 205 (Pa. Super. 2000) (decision as to ultimate distribution of marital assets or liabilities is based on the circumstances surrounding the acquisition of the debt or asset; holding that a portion of marital debt derived from wife's education debt properly belonged to her where she was the exclusive beneficiary of the education).

Just as the education loan debt in *Hicks* properly belonged to the wife who was the exclusive beneficiary of the debt, the alleged business debts in

this case properly belonged to Appellant. Assuming *arguendo* that the loans were legitimate and for purposes of the parties' business, the loans were extended with no involvement of Appellee and Appellant was the lone beneficiary of that debt where it was allegedly used to amass inventory items which were either sold for profit by Appellant or were transferred to his new business following the dissolution of the business that the parties shared.[2] N.T. 1/8/21, 41 (Appellant's accountant testifying that "the inventory went from the corporation to the LLC," meaning that the inventory of Best of France was transferred to Edmondo Crimi, LLC, following Best of France going into inactive status); R.R. 1480. In any event, the claim failed because the trial court acted within its discretion when it found that Appellant failed to proffer credible evidence that the loans were legitimate to begin with and thus this Court will not upset that finding. *See Anderson v. Anderson*, 822 A.2d 824,

---

[2] Appellant's testimony conceded that Appellee had no actual involvement running their business beyond some decorating. *See* N.T. 3/12/21, 68 ("Q. Okay. So was there ever a time that she was actually involved in running the business on a day-to-day basis? A. No. She was more in the decorating capacity and the esthetics of the business.?"); R.R. 1671; *see also* N.T. 3/12/21, 149 ("Q. As of April 4th, 2014, [Appellee] didn't have control of any of the business; she couldn't make any decisions regarding the business, correct? A. No."); R.T. 1752.

Appellee testified that as a condition of their prior reconciliation Appellant would not take on any loans of any kind without her agreement. *See* N.T. 5/4/21, 33 ("A. We agreed that he would not do anything with the business without my knowledge, and that primarily had to do with taking out loans, whether they were personal, private loans or business loans. No loans period without a discussion, and he agreed to that. He agreed that he would not do that."); R.R. 1843.

830 (Pa. Super. 2003) (in determining distribution of marital assets, a master properly rejected a husband's claim of diminished earning capacity due to his medical condition, where husband failed to provide any medical evidence in support of his argument).

## II.

## Value of the Business Inventory

In his second issue, Appellant asserts that the trial court erred or abused its discretion by improperly considering only the assessed value of the inventory assets in its business valuation and failing to deduct the expenses and costs related to acquiring the inventory items. Appellant's Brief, at 32-48. Relying on "Generally Accepted Accounting Principles" (GAAP), he suggests that the inventory should have been "valued at the lower of acquisition cost price and market price." *Id.* at 32. Appellant alleges that the "inventory acquisition costs and business expenses were clearly stated" on the tax returns he proffered below and, where neither of the parties availed themselves "to have a formal business valuation or appraisal of the inventory done by a third-party expert," the trial court erred by assessing the inventory by its "wholesale value." *Id.* at 36-39.

The court did not accept Appellant's valuation scheme because it found that he failed to produce his own inventory assessment and his testimony about being unable to keep track of inventory or sales was "entirely incredible." Decision, Liller, J., 6/15/21, 5; R.R. 956. Moreover, the court found that Appellant had "unclean hands asserting that there [wa]s no way to

establish what the inventory of the business was close to the [parties'] date of separation." Decision, Liller, J., 6/15/21, 6; R.R. 957.

Conversely, the court noted the Appellee's diligence in attaching values to the various items in the inventory assessment offered by her: "Not only does the undersigned have Wife's pictorial inventory, but Wife also did the extensive work of labeling each of the photos and creating spreadsheets with the items detailed, and with their respective values, per her professional opinion." Decision, Liller, J., 6/15/21, 6; R.R. 957. The court noted that Appellee testified that she assessed a wholesale value to the items in the inventories while Appellant testified about general differences between retail, wholesale, and liquidation values. Decision, Liller, J., 6/15/21, 6; R.R. 957. At the same time, however, the court noted that Appellant only listed the "ticketed price" for only approximately 90 of the over 1,000 items in the inventory and typically, the "ticketed price" was "anywhere between 3-6 times the value of [Appellant's] 'willing to sell retail' price." Decision, Liller, J., 6/15/21, 6 n.2; R.R. 957.

The court assessed a marital value to the business inventory of $1,595,753 and that "value was derived from the wholesale values [that Appellee] assigned to the items in her professional opinion." Decision, Liller, J., 6/15/21, 9 & n.6; R.R. 960. The court confirmed that value by comparing the Appellee's assessed values for the inventory with the tax returns filed by Appellant for 2013 and 2014:

The 2013 corporate tax returns reflect that at year's end there was "inventory" of $456,829.00, and the cost of goods sold that year totaled $1,346,495.00 for a combined total of $1,803,324.00. In 2014, the corporate tax returns reflects a year-end inventory value of $406,829.00 and the cost of goods sold was $1,121,281.00 for a combined total of $1,528,110.

Decision, Liller, J., 6/15/21, 9; R.R. 960.

In its Rule 1925(a) opinion, the court noted that Appellant gave "contradictory testimony" about the inventory and characterized his credibility as "almost non-existent." Trial Court Opinion, 8/20/21, 18; R.R. 1433. As a result, the court chose to use the values provided by Appellee. *Id.* The court explained that Appellant's failure to abide by orders for preparing a suitable inventory and valuation essentially forced it to adopt Appellee's valuation of the goods:

Appellant now argues that this Court did not consider the costs incident to acquiring the inventory, however, he fails to acknowledge that it is he who failed to provide the Court with any documentation to evidence the costs and/or expenses incurred to purchase the inventory. Despite multiple Court Orders requiring Appellant to document the inventory and values, he repeatedly failed to do so. Appellant thinks somehow that he can come to Court without any documentation regarding the business inventory, including evidence of the costs/expenses incurred to purchase the inventory, and now claim that the Court committed error. This is all while he had exclusive possession and control of the inventory since the parties' separation, and he failed to do something as simple as take photos of the inventory, or produce any documentation to evidence the costs incurred to produce the inventory. What Appellant fails to acknowledge is that the Court had given him (and Appellee) very crystal-clear guidelines, in the Orders, prior to the de novo Equitable Distribution Hearing, on what to do to have an inventory of the items so that they would have something "frozen in amber" for the Court in Equitable Distribution.

- 20 -

> Since Appellant refused to compile an inventory or provide the Court with appropriate, or credible, values for the times, this Court properly used the credible values provided by Appellee to calculate the value of the business inventory. Both parties were aware of what they needed to do to preserve an accurate accounting of the inventory from the date of separation until the date of Equitable Distribution, including producing evidence to document the costs and/or expense of acquiring the inventory, and whether an item was on consignment or restoration. Appellant's failure to do so is not an error of this Court. The Court properly utilized the only valuation information the parties submitted in evidence to arrive at its value for the business inventory.

*Id.* at 19 (record citation omitted); R.R. 1434.

In these circumstances – where the court below did not find that Appellant credibly offered any valuation, and Appellee offered an acceptable valuation – we cannot find that the court abused its discretion by adopting the Appellee's valuation. The evaluation of the parties' valuation methods is a matter of the lower court's discretion and we generally defer to the lower court's decision in those respects. *See Carney v. Carney*, 167 A.3d 127, 132 (Pa. Super. 2017) ("Our precedent requires that the trial court be given great discretion to evaluate the parties' valuation methods and determine which is most reliable."); *Mundy v. Mundy*, 151 A.3d 230, 236 (Pa. Super. 2016) ("The Divorce Code does not set forth a specific method for valuing assets, and consistent with our standard of review, the trial court is afforded great discretion in fashioning an equitable distribution which achieves economic justice.") (citation omitted).

Here, the lower court, based on its credibility finding against Appellant, concluded that Appellant offered no valuation scheme. When presented with

only one valuation by the parties, the court necessarily does not abuse its discretion by adopting the only valuation presented to it:

> The Divorce Code does not specify a particular method of valuing assets. Thus, the trial court must exercise discretion and rely on the estimates, inventories, records of purchase prices, and appraisals submitted by both parties. When determining the value of marital property, the court is free to accept all, part or none of the evidence as to the true and correct value of the property. Where the evidence offered by one party is uncontradicted, the court may adopt this value even though the resulting valuation would have been different if more accurate and complete evidence had been presented. A trial court does not abuse its discretion in adopting the only valuation submitted by the parties.

*Snyder*, --- A.3d ----, 2022 WL 1161756 (Pa. Super., filed Apr. 20, 2022) (citations, quotation marks, brackets, and footnote omitted).

In any event, Pa.R.C.P. 1920.33 required that Appellant was responsible for serving an inventory. Rule 1920.33(b)(1) "requires *each* party to file and serve on the appropriate party a pre-trial statement regarding assets of the marriage and pertinent information thereto (within 60 days of the master or court hearing), failing to do so [under subsection] (d)(1) *except for good cause shown*, shall bar a party from introducing any evidence in support or in opposition to claims for the matters not covered." *Anderson v. Anderson*, 822 A.2d 824, 828 (Pa. Super. 2003). Appellant's requirement to produce an inventory was alluded to at the hearing on October 12, 2017. N.T. 10/12/17, at 4 ("Appellee: We have things to resolve concerning inventory of the business that was discussed the last time we were here. [Appellant] was supposed to provide to me, within a week's time, all of the inventory with

photographs and documentation … I have never received anything."); R.R. 1289.

Appellant's counsel confirmed that Appellee had an outstanding obligation to produce an inventory for items she removed from the parties' real estate in 2013, and the court noted, "I have yet to see a valid inventory list from him." N.T. 10/12/17, at 13-14; R.R. 1298-99. Appellant's counsel referred to an existing order for Appellant to produce an inventory. N.T. 10/12/17, at 18 (Appellant's counsel: "Your Honor, just to clarify, the order from June 7th was for him to have a list of inventory…"); R.R. 1303. Appellant testified about the inventory of Best of France and a number of items on consignment at that time but did not offer any valuation for the goods. N.T. 10/12/17, 67-71; R.R. 1352-1355. His counsel asked him about his obligation to produce photographs of the inventory and he had nothing to provide to the court. N.T. 10/12/17, 89 ("Q. … you were also asked to produce today inventory pictures. I have some notes here about books. Do you keep any such records of photographs or books of photographs – A. No. Q. – of inventory? A. No. Q. So there is nothing to produce as far as that goes? A. I don't have anything, no."); R.R. 1374. Appellant thereafter agreed to produce photographs for the inventory before a subsequent deposition. N.T. 10/12/17, 103 (Appellant: "I will take the pictures, please, please, Your Honor. I would rather take the pictures than deal with another physical assault."); R.R. 1388. The Court ordered him to do that and to produce a valuation for the items in the photographs. N.T. 10/12/17, 106 (The Court:

"Anyway, Mr. Crimi is directed to take pictures of all his inventory and consignment items. He can take them in groups or individually. I don't care. But for any item there has to be a labeling, like Item 1. And then a list that says what it is and what he says it's worth. If he can remember, I guess we will add, what he says he paid for it.").; R.R. 1391.

At trial, Appellant admitted that no formal valuation was done by a third-party expert because "no one could afford that" and Appellant concluded that he himself was "really an expert in the field." N.T. 3/12/21, 68; R.R. 1671. He explained the difference between wholesale and retail values in the antiques business. *Id.* at 69; R.R. 1672. In the middle of the trial, the court directed Appellant to assess the value of the business inventory that Appellee had submitted and was going to supplement. N.T. 3/12/21, 192 ("Husband will have three weeks thereafter, upon receipt of supplemented list by Wife, to go through it and assess what he believes the value is if he disagrees with Wife's assessed value."); R.R. 1795. In the ensuing exhibit from Appellant, he offered values based on his opinion of the fair market value of the items. N.T. 5/4/21, 8 ("Basically I was thinking that fair market value where items would be marked for retail sale and the amount you can try to get for them."); R.R. 1818.

There were multiple problems with Appellant's stated values. He identified some items as consignment which he could not identify whether they had been sold or returned to clients, and, if sold, he did not offer sale values other than to guess that the return on sales was "approximately 10

percent" when he previously testified that he earned thirty percent on sales. *See* N.T. 5/4/21, 11-12 ("Most of the time it was not a big amount. It would only be approximately 10 percent."); R.R. 1821-22; compare with N.T. 12/12/17, 82 ("Well, I average out a 30 percent profit."); R.R. 392. Appellee at the same time was adamant that they did not "do consignments" at the business. N.T. 5/4/21, 50-51; R.R. 1860-61. Appellant also complicated matters by offering three different values for the court for items documented by Appellee: a retail price, a wholesale price, and a liquidation price. *See* Trial Exhibit J-10, Printout of Excel Inventory Values Spreadsheet; R.R. 2655-2683. None of those values clearly established what costs that the business necessarily incurred to acquire the items – the value that Appellant faults the trial court for not deducting from Appellee's valuation.[3]

On the other hand, Appellee provided a 2014 value for all of the items in the inventory that she documented in different groupings. N.T. 5/4/21, 15, 18; R.R. 1825, 1828. She based her fair market values on a reduced percentage of ticketed prices for some of the items and, in other cases, she relied on prices listed on auction sites on the internet to get an idea of the

---

[3] We must also note that the ability to show costs incurred for the acquisition of inventory items was further complicated by the fact that Appellant alleged that he took on various loans to acquire the inventory but the court below found that there was a lack of evidence of repayments on those loans. Assuming *arguendo* that the alleged loans were legitimate and used for the acquisition of inventory items, the failure to make payments on the loans meant that the lenders rather than Appellant or the business bore the costs for acquiring the inventory items.

current price of similar items in order to come up with a 2014 value for the remaining items without ticket prices. N.T. 5/4/21, 16-17; R.R. 1826-27.

Appellant argues that the trial court should have undertaken the task of assessing the costs of acquiring each of the inventory items and reducing that amount from the overall value of the inventory as the preferred valuation. The record fails to show that he proffered sufficient evidence to allow the court to make that analysis. Our precedent requires that the trial court be given great discretion to evaluate the parties' valuation methods and determine which is most reliable. We defer to the trial court's discretion as factfinder in weighing the evidence and assessing the credibility of the witnesses. Accordingly, in this instance, we find no error or abuse of discretion with respect to the trial court's valuation of the inventory.

## III.

### "Equitable Reimbursement Alimony"/Ability to Pay

In his third issue, Appellant claims that the trial court erred or abused its discretion by awarding "equitable reimbursement alimony" in the amount of $139,399.00 because it did so knowing that he lacked the assets or income to satisfy those payments where the court assessed his earning capacity as $60,000.00 per year and he had no investments, real estate, or significant assets. Appellant's Brief, at 48-56. Additionally, he argues that the court erred in not ordering a supersedeas of the decree and order pending this appeal and classifying the award as both "equitable reimbursement" and "alimony." *Id.* at 49-52.

"Where a divorce decree has been entered, the court may allow alimony, as it deems reasonable, to either party only if it finds that alimony is necessary." 23 Pa.C.S. § 3701(a). The Divorce Code lists seventeen factors expressly mandated for consideration of alimony and that list of factors does not create an unexhaustive list. **Conner**, 217 A.3d at 316, citing 23 Pa.C.S. § 3701(b). "When so ordered by the court, all payments of child and spousal support, alimony or alimony pendente lite shall be made to the domestic relations section of the court which issued the order or the domestic relations section of the court at the residence of the party entitled to receive the award." 23 Pa.C.S. § 3704. Among the enumerated policies of the Divorce Code is a goal to "[e]ffectuate economic justice between the parties who are divorced or separated and grant or withhold alimony according to the actual need and ability to pay of the parties and insure a fair and just determination and settlement of their property rights." 23 Pa.C.S. § 3102(a)(6); **see also** 23 Pa.C.S. § 3323(f) (granting the court equity power to issue an order to effectuate the purpose of the Divorce Code or to protect the parties' interests).

Here, the court settled upon the amount of payments that Appellant would be assigned to making to Appellee by combining the court's valuation of – at the time of the parties' separation – the business's inventory, the business's bank balance, the existing arrears from prior alimony ordered, and Appellant's truck, subtracting the value of inventory items that were previously removed by Appellee from the business, and then deciding to give shares of 55% and 45% of the estate to Appellee and Appellant:

After consideration of all the relevant factors, set forth at 23 Pa.C.S.A. § 3502, the Court finds that the marital estate consists of the inventory of the business close to the date of separation ($1,595,753.00), the balance in the Best of France Antiques, Inc. bank account as of January 1, 2014 ($33,415.00); and the stipulated value of $1,000.00 for Husband's truck. Wife received an advance of $65,000.00 for the inventory and Husband owed Wife $1,000.00 in sanctions from a contempt proceeding on February 14, 2018. Husband also owes Wife outstanding support arrears totaling $21,779.99 as of June 1, 2021. The undersigned finds that Wife is entitled to 55% of the marital estate, and Husband shall receive 45%.

Wife shall receive, therefore, $878,614.00 minus the $65,000.00 advance for the inventory she took after May 2014, which is a total of $813,614.00. Husband additionally owes Wife $1,000.00 for the agreed upon sanctions, and $21,779.99 in support arrears, to bring the total amount to Wife by Husband to $836,393.00.

Decision, Liller, J., 6/15/21, 14; R.R. 965.

To the extent that Appellant alleges that the court failed to take into consideration his ability to satisfy the distribution payments, the record contradicts him. The court found that his assertions that he lacked the assets or income to pay "to be meritless." Trial Court Opinion, 8/20/21, at 20; R.R. 1435. The court viewed his alleged debt obligations to be illegitimate and vehicles for improper dissipation of the marital assets available for distribution. *Id.* at 20-21 ("The Court believes Appellant is playing a shell game with the business assets, including the inventory and the supposed 'debts' he incurred, as well as the Chestnut Grove Property, which was foreclosed upon due to Appellant's years long failure and refusal to pay the commercial loan on the real property."); R.R. 1435-36. Minus the alleged

debts under the court's credibility determination, the court inferred that Appellant had an ability to pay because he retained control of the inventory of the parties' business and seemingly retained some interest in the real property containing their residential and business properties which had since been acquired by a friend of the Appellant, who was one of his alleged lenders.

We will not upset the court's analysis to that effect by finding an abuse of discretion because the record appears to support it. The evidence supported the court's credibility finding as to Appellant's former ability to pay, prior to the foreclosure of the parties' real property. In particular, the trial court notes that, while Appellant lost the parties' real property to foreclosure due to Appellant's supposed inability to make loan payments for the property, Appellant subsequently made consistent rent payments for a tenancy of the same property after it had been acquired by his friend, Mr. Worthington. Trial Court Opinion, 8/20/21, 21 n.18 ("Clearly, Appellant had the funds to pay the monthly Wells Fargo loan balance and the undersigned is of the opinion that Appellant was actively and willfully dissipated this asset, due to his failure to pay the loan."); R.R. 1436. Moreover, as documented by the trial court, the record failed to show that Appellant had legitimate debt obligations that would hamper his future ability to pay where there was little proof of his payments on the alleged "loans," Appellant's accountant lacked documentation for the loans, and the sources of Appellant's alleged loans continued to lend him money despite proof of any significant prior repayments on earlier loans. Trial Court Opinion, 8/20/21, 9-15; R.R. 1424-30.

As for the portion of Appellant's claim addressing the failure of the trial court to grant his petition for supersedeas, it is unavailing for the same reason that this Court already decided in its own order denying supersedeas:

> Appellant has not successfully demonstrated the satisfaction of the requirements for issuance of a stay as set forth in ***Pa. Public Utility Cmm'n v. Process Gas Consumers Group***, 467 A.2d 805 (Pa. 1983), i.e. (1) likely to prevail on the merits of an appeal; (2) without the requested relief, will suffer irreparable injury; (3) the issuance of a stay will not substantially harm other interested parties; and (4) the issuance of a stay will not adversely affect the public interest.

Superior Court *Per Curiam* Order, 10/7/21, at 1. Where this Court already separately denied a petition for supersedeas, we could not find error by the trial court denying a petition for the same relief.

With respect to Appellant's assertion that the court erred by issuing a combined schedule of payments for "equitable reimbursement alimony" directed to be paid to the County's Domestic Relations Section, we agree with Appellant that the court misapplied the law and abused its discretion. Equitable reimbursement and alimony, while similar in appearance are two distinct concepts, and the trial court should have not comingled awards for each in a single payment scheme if it had intended to award both. ***See Schenk v. Schenk***, 880 A.2d 633, 640 n.7 (Pa. Super. 2005) ("The purpose of equitable reimbursement is compensation, while the purpose of alimony is to ensure that the reasonable needs of the person who is unable to support himself or herself through appropriate employment, are met.").

Here, the "alimony" portion of the awarded payments seems to refer to the inclusion of Appellant's outstanding arrears on a prior order for support payments, and does not actually include the creation of a new alimony obligation. **See Moran v. Moran**, 839 A.2d 1091, 1096 (Pa. Super. 2003) ("[a]limony following a divorce is a *secondary remedy* and is available only where economic justice and the reasonable needs of the parties cannot be achieved by way of an equitable distribution award and development of an appropriate employable skill.") (citation omitted). The remaining portion of the awarded payments, with the exception of an outstanding contempt sanction, appears to pertain to the equitable division of marital property under 23 Pa.C.S. § 3502 rather than "equitable reimbursement." **See Wang v. Feng**, 888 A.2d 882, 888 (Pa. Super. 2005) ("In addition to division of the marital estate, "[t]he courts of this Commonwealth have created the doctrine of 'equitable reimbursement' as a method of compensating a spouse for his or her contribution to the marriage where the marital assets are insufficient to do so.") (citation omitted).

The court below characterizes the awarded payments in part as for "equitable reimbursement," but that appears to be incorrect. The judicially-created doctrine of "equitable reimbursement" only becomes an option "where the existing marital assets, if equitably distributed, would be insufficient to compensate the payee spouse for his or her contribution to the marriage." **Johnson v. Johnson**, 864 A.2d 1224, 1230 (Pa. Super. 2004). In this instance, the court did not find that there was insufficient marital property for

Appellant to compensate Appellee. Instead, the court specifically rejected Appellant's assertion of a lack of insufficient marital property. Trial Court Opinion, 8/20/21, 20 ("The Court finds Appellant's assertion that he lacks the assets or income to pay to be meritless."); R.R. 1435. For this reason, we believe that the trial court was incorrectly referring to the equitable division of the marital asserts as equitable reimbursement because both of the concepts result in the compensation of a spouse which is what the trial court was aiming for with its reward of the payment scheme.[4] *Schenk*, 880 A.2d at 640 ("[E]quitable reimbursement is nothing more than a method of compensating a spouse for that which is fairly due to him or her. Whether this compensation is achieved via equitable distribution, or via 'equitable reimbursement' as it is when there is insufficient martial property available to compensate the spouse, the result is the same.").

In any event, by combining the award of alimony arrears and equitable division and designing the payment scheme under the broad title of "equitable reimbursement alimony," the trial court has created a number of problems and inadvertent consequences.

First, if the total award could be construed as alimony then Appellee could be barred from receiving it if she entered into a cohabitation with

---

[4] If the court believed that there was existing marital property to allow Appellant to sufficiently compensate Appellee then the court should have equitably divided, distributed, or assigned the property pursuant to 23 Pa.C.S. § 3502(a). If there was a finding of insufficient marital property then the court should have created an installment payment plan between the parties under the doctrine of equitable reimbursement.

another person. **See** 23 Pa.C.S. § 3706. That possibility was clearly not the intent of the court because the awarded payments were not specifically geared toward continuing support.

Second, by combining the payment of alimony arrears and equitable distribution in a single award of installment payments, the trial court has created a murky outcome where it is unclear how the parties would resolve a failure to comply with the awarded payments. The mechanisms for enforcing those forms of payments are controlled by two similar, but entirely different sections of the Domestic Relations Code. **See** 23 Pa.C.S. § 3502(e) (addressing the powers of a court when a party has failed to comply with an order of equitable distribution); 23 Pa.C.S. § 3703 (providing options for enforcing the payment of alimony arrears).

Third, the court has unnecessarily complicated matters by requiring Appellant to make the awarded installment payments to the Domestic Relations Section of the trial court. The payment of alimony is required to be paid to the Domestic Relations section of the trial court under 23 Pa.C.S. § 3704. The Property Rights section of the Domestic Relations Code does not contain a similar requirement of payments to the Domestic Relations section for equitable division payments. **See, e.g., Wayda v. Wayda**, 576 A.2d 1060, 1064 (Pa. Super. 1990) (allowing divorced wife to pay husband his share of marital property installments over a ten-year period, rather than a lump-sum payment, was not an abuse of discretion). Presuming that the payments in question were for "equitable reimbursement" they should have

- 33 -

been designated as installment payments from Appellant directly to Appellee rather than through the Domestic Relations Section. *See Johnson*, 864 A.2d at 1229 ("The concept of 'equitable reimbursement' is a judicially-created doctrine where a payor spouse pays installment payments to the payee spouse …").

For all of these reasons, we must vacate the current schedule of award payments under the "Equitable Reimbursement Alimony" section of the trial court's order and decree. We direct the trial court to conduct further proceedings to address the non-payment of alimony arrears under 23 Pa.C.S. § 3703, and to separately order the division of the marital property and an appropriate distribution which will achieve the goals of compensating Appellee and effectuating economic justice between the parties.

## VI.

### Evidentiary Issues

In his last issue, Appellant claims that the trial court erred or abused its discretion by improperly disregarding his evidence, testimony, and witnesses "based on pure conjecture" and making improper interpretations of the evidence and prior rulings in the case. Appellant's Brief, at 56-61. In particular, he points to five alleged discrepancies: (1) the court referred to a stipulation that Appellee took $65,000 worth of their business inventory where a prior transcript supposedly showed that the while $65,000 worth of inventory was previously granted to Appellee, the parties did not agree to a total value of the items taken by Appellee; (2) the court alleged that no

payments were made on business loans whereas Appellant alleges that he proffered evidence of repayments; (3) the court alleged that there was no evidence of rents paid by the business where "the record is replete" with evidence of rents being paid by the business; (4) the court falsely stated that Appellant did not provide an inventory ordered in April of 2017; and (5) the court falsely stated that Appellant did not provide Appellee with monthly statements that were ordered in hearings in April and October of 2017. *Id.*

In its opinion, the trial court finds that this claim was waived because it was not identified with specificity in Appellant's statement of issues presented on appeal pursuant to Pa.R.A.P. 1925(b). Trial Court Opinion, 8/20/21, 22-23; R.R. 1437-38. In his Rule 1925(b) statement, Appellant identified his claim as follows: "The trial court erred and/or abused its discretion by improperly disregarding Appellant's evidence, testimony and witnesses based on pure conjecture regarding 'facts' not in evidence, and factually erroneous interpretations of the evidence and prior rulings." Appellant's Rule 1925(b) Statement, ¶ 2(d); R.R. 978. We agree with the trial court's recommendation for waiver.

From Appellant's appellate brief we can glean that he wanted to raise five evidentiary claims that were first raised in his post-decree reconsideration motion. Appellant's vague assertion in his Rule 1925(b) statement, however, did not identify the particular claims raised in the reconsideration motion and thus failed to put the trial court on notice that he was challenging the denial of those claims. Under Pa.R.A.P. 1925(b)(4), Appellant was required to

concisely identify each error that he intended to assert "with sufficient detail to identify the issue[s] to be raised for the judge."[5]  By failing to refer to any specific evidentiary rulings for the instant claim, Appellant waived it.  Pa.R.A.P. 1925(b)(4)(v) ("Issues … not raised in accordance with the provisions of this paragraph (b)(4) are waived."); *Childress v. Bogosian*, 12 A.3d 448, 458-59 (Pa. Super. 2011) (finding waiver under Rule 1925 in an equitable distribution matter); *see, e.g., Duffy v. Duffy*, 2019 WL 4187602 (Pa. Super., filed Sep. 4, 2019) (in an equitable distribution matter this Court found waiver of five arguments that the lower court abused its discretion by failing to account for "material evidence" when devising its equitable distribution scheme where Appellant generally identified the claim in his Rule 1925(b) as follows: "[T]he trial court abused its discretion in dismissing material evidence related to the agreements between the parties, as well as evidence related to vehicles, the house, credit cards, and other assets and liabilities.") (unpublished memorandum cited for its persuasive value pursuant to Pa.R.A.P. 126(b)(2)).

Order affirmed in part, reversed in part.  Case remanded for further proceedings in accordance with this memorandum.  Jurisdiction relinquished.

---

[5] Pa.R.A.P. 1925(b)(4)(vi) permits that "[i]f the appellant in a civil case cannot readily discern the basis for the judge's decision, the appellant shall preface the [Rule 1925(b)] Statement with an explanation as to why the Statement has identified the errors in only general terms.  In such a case, the generality of the Statement will not be grounds for finding waiver."  That provision does not apply here because Appellant never offered any indication in his Rule 1925(b) statement suggesting a need for only generally referring to his claim.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>5/25/2022</u>